RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2000 FED App. 0261P (6th Cir.)
File Name: 00a0261p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

*v.*

No. 98-6619

PHILIP A. GODMAN,
*Defendant-Appellant.*

Appeal from the United States District Court
for the Western District of Tennessee at Memphis.
No. 98-20080—Jon Phipps McCalla, District Judge.

Submitted: March 16, 2000

Decided and Filed: August 2, 2000

Before: JONES, BATCHELDER, and CLAY, Circuit
Judges.

_____

**COUNSEL**

**ON BRIEF:** Robert C. Brooks, Memphis, Tennessee, for
Appellant. Joseph C. Murphy, Jr., ASSISTANT UNITED
STATES ATTORNEY, Memphis, Tennessee, for Appellee.

1

---

**OPINION**

---

BATCHELDER, Circuit Judge.  Philip Godman appeals from a judgment sentencing him to twenty-seven months' imprisonment and three years of supervised release for counterfeiting. Because we conclude that the district court improperly applied an enhancement in sentencing Godman, we vacate the order of the district court and remand for resentencing.

**I**

Godman was apprehended after selling counterfeit money to a Secret Service Agent.  He pled guilty to one count of counterfeiting Federal Reserve Notes in violation of 18 U.S.C. § 471.  At sentencing, the district court considered whether to apply a two-level enhancement to Godman's base offense level pursuant to U.S.S.G. § 3B1.3 based on his use of computer skills.

Testimony showed that Godman made the counterfeit bills using an off-the-shelf software package, Adobe Page Maker. Starting with a genuine Federal Reserve note, he would create a digital image using a computer scanner.  After importing the image file into Page Maker, he would utilize the program's features to enhance the colors and change the serial numbers of the bill.  Godman would then print one side of the bill on standard paper, using a color inkjet printer.  He would repeat the process for the other side of the bill, and trim the bills to the proper size.  The Secret Service characterized the quality of the resulting product as "fair".  Godman succeeded in passing one of these notes at a Taco Bell, and another at a yard sale.

Godman had no formal computer education.  He learned to use the Page Maker program with the assistance of a high school friend in the course of a week.  Prior to launching his counterfeiting career, Godman used his computer skills in his

father's auto parts sales business. Godman prepared for the business a color catalog, which he updated several times.

The district court examined the counterfeit notes that Godman had produced and found that they were of fairly good quality. Laying heavy emphasis on the quality of the bills, the court noted that Godman had used "the skills that he had acquired in the desktop publishing enterprise that he was involved in for his dad, and it took . . . some skill to come up with a decent looking bill." Because this skill was peculiar to Godman, and not generally shared by the public, the court concluded that an adjustment under U.S.S.G. § 3B1.3 was appropriate.

## II

"We review a district court's factual finding regarding application of § 3B1.3 for clear error." *United States v. Lewis*, 156 F.3d 656, 658 (6th Cir. 1998) (internal quotation marks omitted). The district court's conclusion that skills possessed by a defendant are "special" within the meaning of the Guideline, however, is a mixed finding of law and fact that this court reviews de novo. *See United States v. Murphy*, 96 F.3d 846, 848 (6th Cir. 1996) ("We review *de novo* the district court's application of the guidelines to a set of facts that, as here, is undisputed."); *see also United States v. Ragland*, 72 F.3d 500, 502 (6th Cir. 1996) (holding that a district court's conclusion that a defendant held a "position of trust" for purposes of § 3B1.3 was to be reviewed de novo).

United States Sentencing Guideline § 3B1.3 provides in pertinent part that "If the defendant . . . used a special skill, in a manner that significantly facilitated the commission or concealment of the offense, increase [the Base Offense Level] by 2 levels." Application Note 3 in the Commentary provides that " 'Special skill' refers to a skill not possessed by members of the general public and usually requiring substantial education, training or licensing. Examples would include pilots, lawyers, doctors, accountants, chemists, and demolition experts."

We find no clear error in the district court's factual determinations that Godman acquired his computer skills in the course of designing a catalog for his father's business and that such skills are not shared by the general public. Nevertheless, the district court stressed these factors overmuch in determining whether Godman's skill was "special" for purposes of § 3B1.3. As the Application Note's reference to the substantial training of such professionals as doctors and accountants suggests, emphasis is better placed on the difficulty with which a particular skill is acquired.

In this regard, we are guided by the Ninth Circuit's holding in *United States v. Petersen*, 98 F.3d 502 (9th Cir. 1996). There the court applied a § 3B1.3 enhancement to a defendant who had no formal computer training, but was so skilled that he could hack into the computers of a telephone company and seize control of telephone lines leading to a radio station. *See id.* at 504, 506. The court remarked, "Despite Petersen's lack of formal training or licensing, his sophisticated computer skills reasonably can be equated to the skills possessed by pilots, lawyers, chemists, and demolition experts for purposes of § 3B1.3." *Id.* at 507. In a cautionary footnote, the court continued:

> We do not intend to suggest that the ability to use or access computers would support a "special skill" adjustment under all circumstances. Computer skills cover a wide spectrum of ability. Only where a defendant's computer skills are particularly sophisticated do they correspond to the Sentencing Commission's examples of "special skill"—lawyer, doctor, pilot, etc.

*Id.* at n.5.

In this case, Godman's computer skills cannot reasonably be equated to the skills possessed by the professionals listed as examples in the Application Note. Such skills are acquired through months (or years) of training, or the equivalent in self-tutelage. Computer skills on the order of those possessed by Godman, by contrast, can be duplicated by members of the general public with a minimum of difficulty. Most persons of average ability could purchase desktop publishing software from their local retailer, experiment with it for a short period of time, and follow the chain of simple steps that Godman used to churn out counterfeit currency. Godman's computer skills thus are not "particularly sophisticated" as suggested by the *Petersen* case.

At a time when basic computer abilities are so pervasive throughout society, applying § 3B1.3 to an amateurish effort such as Godman's would threaten to enhance sentences for many crimes involving quite common and ordinary computer skills. The Guidelines contemplate a more discriminating approach. We therefore vacate Godman's sentence and remand the case for resentencing.