GRIFFIN, J., delivered the opinion of the court, in which ROGERS, J., joined. DONALD, J. (pp. 455-64), delivered a separate dissenting opinion.
OPINION
GRIFFIN, Circuit Judge.
Jeffrey J. Reichert appeals his criminal conviction and sentence under the Digital Millennium Copyright Act (the “DMCA”) asserting three grounds: (1) that the jury received an inaccurate “deliberate ignorance” instruction that had the effect of negating the requirement that Reichert’s conduct be a “willful” violation of the DMCA; (2) that the exclusion of a defense witness’ testimony violated Reichert’s constitutional right to present a defense; and (3) that he was improperly assessed a “special skills” sentencing enhancement under U.S.S.G. § 3B1.3. We hold that the *448 jury instructions as a whole properly stated the law, the excluded testimony was not so vital to Reichert’s defense that its exclusion caused him constitutional injury, and Reichert’s self-taught technical expertise merited a § 3B1.3 enhancement. We therefore affirm.
I.
“Congress enacted the DMCA in 1998 to comply with international copyright treaties and to update domestic copyright law for the online world.” Ellison v. Robertson, 357 F.3d 1072, 1076 (9th Cir.2004). In large part, the DMCA was intended to give copyright owners additional means to protect copyrighted materials in the digital age. Although copyright owners often attempted to protect digitized materials behind digital passwords or encryption codes, “[pjrior to the DMCA, a copyright owner would have had no cause of action against anyone who circumvented any sort of technological control, but did not infringe [the copyright].” Chamberlain Group, Inc. v. Skylink Technologies, Inc., 381 F.3d 1178, 1195-96 (Fed.Cir.2004). Due to the ease of digital piracy, copyright owners feared that the ability to pursue only infringers, rather than those who “picked the lock” and enabled the infringement to occur in the first place, was inadequate to protect their copyrighted material. See Universal City Studios, Inc. v. Corley, 273 F.3d 429, 435 (2d Cir.2001).
In response to this problem, the DMCA gave copyright owners a remedy against those who did not themselves infringe a copyright but instead circumvented technological controls and thereby enabled others to infringe. It did so by creating both “circumvention liability for digital trespass under [17 U.S.C.] § 1201(a)(1),” and “trafficking liability under [17 U.S.C.] § 1201(a)(2) for facilitating such circumvention.” Chamberlain Group, 381 F.3d at 1196. Thus, the DMCA “targets the circumvention of digital walls guarding copyrighted material (and trafficking in circumvention tools),” even though it “does not concern itself with the use of those materials after circumvention has occurred.” Corley, 273 F.3d at 443; see also MGE UPS Sys., Inc. v. GE Consumer & Indus., Inc., 622 F.3d 361, 366 (5th Cir. 2010). Circumventing or trafficking in circumvention tools in violation of § 1201 is a criminal offense if it is committed “willfully” and for commercial or private financial gain. 17 U.S.C. § 1204(a).
Reichert was prosecuted under the DMCA for trafficking in circumvention technology. Federal agents had begun investigating Xbox-scene.com, a website that hosted online forums dedicated to the discussion of modifying video game consoles by installing “modification chips” (or “mod chips”) in them so that they could run software for which the consoles were not originally designed. Reichert was one of the moderators of the discussion forums hosted on Xbox-scene.com, and an undercover agent contacted him in 2007, requesting a modified Nintendo Wii. Reic-hert responded to the agent’s requests, purchased a Wii, installed a modification chip, and sold the modified Wii to the agent for a $50 profit. When the Wii was tested, it was able to play both legitimate video games and pirated ones. Agents subsequently obtained a search warrant and seized modification chips, a soldering iron, computers, and business cards advertising Reichert’s services from Reichert’s residence, as well as from the garage of one of his friends, Kevin Belcik. Reichert ultimately was charged in a one-count indictment under 17 U.S.C. § 1201(a)(2)(A), which prohibits, in relevant part, the trafficking of any technology that “is primarily designed or produced for the purpose of circumventing a technological measure *449 that effectively controls access to a work protected [by copyright].” Id.
At trial, the government put on evidence that modification chips are used to fool or bypass a game console’s security measures and enable users to run software for which the console was not originally intended. One of the government’s expert witnesses testified that the “primary purpose” of modification chips is to enable a user to play pirated video games. Although each particular hardware version of a console requires its own specialized modification chip, the government’s witness detailed in general terms how a modification chip would typically be installed: the console would be opened, and wires from the modification chip would be soldered to the appropriate locations on a console’s circuit board. According to the witness, it is a “pretty complicated process,” given that the modifier needs to identify the proper locations to which to attach the wires and because holding a soldering iron on the circuit board for too long could damage the board. As an example, the witness referenced one modification that required soldering twenty-nine individual wires to the circuit board.
Several online postings were also admitted against Reichert at trial. In one, Reic-hert informed an inquirer that a specific type of modification chip “is the best chip for sure, but it’s not for people, normal people. You can [s]crew stuff up if you are not careful.” In another, an Xbox-scene.com user lauded Reichert as “the only person ... on any forum that knew there was another way beside the 29 wire mod” to modify a certain type of console. Some of Reichert’s other online postings directed forum users to sites and chat rooms where they could obtain pirated games and thwart console manufacturers’ ability to detect that their consoles were modified.
One government agent noted that in March 2007, Reichert posted on an online forum discussion board, “ha ha, I meant that no one cares if people are doing installs. We aren’t technically supposed to do it.” Another agent, who had interviewed Reichert during the search of his residence, testified that, while Reichert “never stated to me that it was illegal to [sell and install modification chips], ... he did state that he knew the mod chips were in a gray area.” Finally, although one agent testified that Reichert did not knowingly order his modified chips from an international source, another witness testified that “it is pretty well known among the community that in the United States mod chips without licenses are illegal.”
After the conclusion of the prosecution’s case, Reichert’s friend Belcik testified as the lone witness on Reichert’s behalf. Bel-cik testified that he and Reichert learned in a “vocational program in high school” how to build computers, and that Reichert modified his first Xbox in about 2003, while in eleventh or twelfth grade. Belcik testified that Reichert believed that some people were using modified consoles to play illegal software. Belcik began to state that Reichert “indicated that what he was doing was basically a hardware modification, not' dissimilar from any work that we would do on a normal PC,” but the government objected. The district court sustained the objection and refused to allow Belcik to testify about whether Reichert had ever stated whether he thought his conduct was illegal. Defense counsel proffered that, if the objection had been overruled, Belcik would have testified that Reichert “indicated that he believed that modifying the hardware was legal but selling the copyrighted games was illegal.”
Before the jury was instructed, Reichert objected to the proposed instruction on deliberate ignorance, contending that “de *450 liberate actions” must be proven in order to prove deliberate ignorance. The district court overruled Reichert’s objection and declined to give the alternative deliberate ignorance instruction proposed by Reichert.
Before instructing the jury on deliberate ignorance, the district court gave the following instruction on “willfulness”:
As used in these instructions, an act is done willfully if it is done voluntarily and intentionally with the intent to do something unlawful, that is, with the intent either to disobey or disregard the law.
While a person must have acted with the intent to do something the law forbids, the person need not be aware of the specific law or the rule his conduct is violating. Willfulness requires the Government to prove that the law imposed a duty on the Defendant, that the Defendant knew of this duty, and that he voluntarily and intentionally violated that duty.
The court then gave the following deliberate ignorance instruction:
Next, I want to explain a little something about proving a Defendant’s knowledge. No one can avoid responsibility for a crime by deliberately ignoring the obvious. If you are convinced that the Defendant deliberately ignored a high probability that he was trafficking in technology primarily designed to circumvent technological measures designed to effectively control access to a work copyrighted under federal law, then you may find that he knew he was violating the Digital Millennium Copyright Act.
But to find this, you must be convinced beyond a reasonable doubt that the Defendant was aware of a high probability that he was violating the
Digital Millennium Copyright Act, and that the Defendant deliberately closed his eyes to what was obvious. Carelessness or negligence or foolishness on his part is not the same as knowledge and is not enough to convict.
The jury convicted Reichert on the indictment’s lone charge. The presentence report (“PSR”) prepared in Reichert’s case assigned him an offense level of 12 under U.S.S.G. § 2B5.3(b)(3)(B) and added a two-point “special skills” enhancement under U.S.S.G. § 3B1.3, concluding that Reic-hert’s crime was facilitated by his possession of technical computer skills “not ... possessed by members of the general public.” Reichert’s total offense level of fourteen and criminal history category of I subjected him to an advisory Guidelines range of fifteen to twenty-one months.
Reichert objected to the special skills enhancement, but the district court overruled his objection, expressing its opinion that the enhancement was proper. Nevertheless, the court observed that Reichert was “getting a tough deal” and varied downward “two levels” from the Guidelines, ultimately sentencing Reichert to twelve months and one day of imprisonment. Reichert now appeals his conviction and sentence.
II.
A. Jury instructions.
Reichert’s first line of argument, which implicates the jury’s finding that his conduct was “willful,” is notably narrow. Reichert does not argue that the pertinent portions of the DMCA are so vague or of such uncertain application that no defendant could know that his conduct was actually illegal. Nor does Reichert challenge any of the jury’s findings — including its willfulness finding — as supported by insufficient evidence.
*451 Instead, Reichert claims that the jury was given a deliberate ignorance instruction that was erroneous in at least two respects. First, Reichert argues that the instruction failed to properly reflect that a defendant is willfully blind only if he took “deliberate action” to avoid actual knowledge. See Global-Tech Appliances, Inc. v. SEB S.A., — U.S.-, 131 S.Ct. 2060, 2070, 179 L.Ed.2d 1167 (2011). But Reic-hert is incorrect. The deliberate ignorance instruction given in this case tracks the language of Sixth Circuit Pattern Criminal Jury Instruction § 2.09. The pattern instruction explicitly incorporates the requirement that a defendant act “deliberately” to avoid full knowledge, and we have “repeatedly” held the instruction to be an accurate statement of the law. United States v. Mitchell, 681 F.3d 867, 876 n. 51 (6th Cir.2012).
Second, Reichert asserts that the deliberate ignorance instruction incorrectly implemented the pattern jury instruction and consequently eviscerated the DMCA’s willfulness requirement by allowing the jury to convict him upon finding only that he knew that he was trafficking in circumvention technology, rather than after finding that he knew that he was violating the law by trafficking in such technology. Although a district court’s refusal to give a jury instruction is reviewed for abuse of discretion, this court reviews de novo a claim that a jury instruction inaccurately stated the law. United States v. Roth, 628 F.3d 827, 833 (6th Cir.2011). As we have made plain, “no single provision of the jury charge may be viewed in isolation; rather, the charge must be considered as a whole.” United States v. Ross, 502 F.3d 521, 527 (6th Cir.2007). Reversal is warranted only “if the instructions, viewed as a whole, were confusing, misleading and prejudicial.” United States v. Burchard, 580 F.3d 341, 345 (6th Cir.2009). By contrast, where the instructions, “taken as a whole, fairly and adequately submit[ ] the issues and applicable law to the jury,” our inquiry ends, as a defendant cannot be improperly prejudiced by a jury instruction that is warranted by the evidence and that accurately states the law. United States v. Zidell, 323 F.3d 412, 427 (6th Cir.2003).
Despite Reichert’s assertions, we cannot agree with Reichert that the jury instructions, viewed as a whole, improperly negated the DMCA’s willfulness requirement. No court has yet discussed the reach of 17 U.S.C. § 1204(a)’s willfulness requirement, and on this appeal we do not decide its scope. For this appeal, the parties agree that it requires the government to prove that Reichert voluntarily and intentionally violated a known legal duty.[1] This is consistent with our typical approach, as “[gjenerally ..., in criminal cases, in order to establish a ‘willful’ violation of a statute, the Government must prove that the defendant acted with knowledge that his conduct was unlawful.” Roth, 628 F.3d at 834 (internal quotation marks omitted). It is also ordinarily the case that a defendant need not be aware of the specific provision of law that his conduct violates, as long as he is aware that his act is illegal. Id.; see Bryan v. United States, 524 U.S. 184, 196, 118 S.Ct. 1939, 141 L.Ed.2d 197 (1998) (willful violation of 18 U.S.C. § 924(a)(1)(D) requires only “knowledge that the conduct is unlawful,” not knowledge of the specific legal provisions prohibiting the defendant’s conduct); see also United States v. Cross, 816 F.2d 297, 300 (7th Cir.1987). Reichert also concedes that the DMCA’s willfulness require *452 ment may be satisfied by a showing of willful blindness; that is, a defendant’s conscious decision to remain ignorant of the illegality of his conduct even when the defendant is aware of a high probability that his conduct is in fact illegal. See Mitchell, 681 F.3d at 876-77.
Reichert’s argument rests primarily on the first portion of the deliberate ignorance instruction. It advised the jury, “If you are convinced that the Defendant deliberately ignored a high probability that he was trafficking in technology primarily designed to circumvent technological measures designed to effectively control access to a work copyrighted under federal law, then you may find that he knew he was violating the Digital Millennium Copyright Act.” Given that this language hinges the requisite mens rea finding on Reic-hert’s knowledge that the technology in which he trafficked was primarily purposed to facilitate illegal conduct, Reic-hert’s claim that it eviscerated the DMCA’s willfulness requirement is tenuous. See Roth, 628 F.3d at 834-35 (indicating that awareness of broad criminal regulations obviously applicable to defendant’s conduct may suffice for willfulness). Still, devoid of context, this part of the instruction lends some support to Reic-hert’s position, as it seems to inform the jury that if Reichert deliberately ignored a high probability that he merely engaged in the conduct at issue, then the jury could find that Reichert knew that his conduct violated the DMCA.
But Reichert’s focus is too myopic. Even to the extent that the challenged portion of the instruction could have been more precise, it was not given in a vacuum. Instead, it was sandwiched between two instructions that stated the stricter requirement and clarified the challenged language. Immediately before giving the challenged instruction, the district court gave an instruction on “willfulness,” explaining that an act is willful if done “with the intent either to disobey or disregard the law,” that the defendant “must have acted with the intent to do something the law forbids,” and that the government must prove “that the law imposed a duty on the Defendant, that the Defendant knew of this duty, and that he voluntarily and intentionally violated that duty.” And immediately after giving the portion of the deliberate ignorance instruction to which Reichert objects, the district court cautioned the jury that, to find that Reichert knew that he was violating the DMCA, “you must be convinced beyond a reasonable doubt that the Defendant was aware of a high probability that he was violating the Digital Millennium Copyright Act, and that the Defendant deliberately closed his eyes to what was obvious.”
In context, therefore, the language relied upon by Reichert did not detract from the jury instructions’ overall import: when viewed “as a whole,” the jury instructions given in this case properly instructed the jury on the issue of willfulness. Ross, 502 F.3d at 527. Reichert has never objected to the district court’s willfulness instruction, and it informed the jury that, for a defendant’s conduct to be willful, he “need not be aware of the specific law or the rule his conduct is violating.” Even in Reic-hert’s formulation, then, the jury was not required to find that Reichert knew that his conduct violated any specific statute; all that was required to convict Reichert was a finding that he knew that his conduct was illegal. Roth, 628 F.3d at 834-35. This is exactly what the district court’s “willfulness” instruction told the jury, and the mildly imprecise deliberate ignorance instruction did not fatally undermine it.
Having been properly instructed, the jury found that Reichert constructively knew that his conduct was against the law, *453 given his admissions that he was operating in a “gray” area of the law and was “technically” not supposed to be engaging in his conduct. Reichert does not directly challenge the jury’s factual finding in this regard, claiming that he is due a reversal based purely on instructional error. Because the jury instructions accurately stated the law, however, Reichert’s position is without merit.[2]
B. Constitutional right to present a defense.
Reichert next claims that he was denied his constitutional right to present a defense when the district court excluded Belcik’s testimony indicating that Reichert had previously expressed a belief that modifying consoles was not illegal. “Whether rooted directly in the Due Process Clause of the Fourteenth Amendment or in the Compulsory Process or Confrontation Clauses of the Sixth Amendment, the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense.” Holmes v. South Carolina, 547 U.S. 319, 324,126 S.Ct. 1727, 164 L.Ed.2d 503 (2006) (quotation marks and citations omitted).
Reichert’s decision to frame his argument in constitutional terms is significant. Where a defendant attacks an evi-dentiary ruling as violating the Sixth Amendment, review of the legal aspects of the constitutional violation is de novo. United States v. Hardy, 586 F.3d 1040, 1043 (6th Cir.2009). But see United States v. Schreane, 331 F.3d 548, 564 (6th Cir. 2003) (“An appellate court reviews all evi-dentiary rulings — including constitutional challenges to evidentiary rulings — under the abuse-of-discretion standard.”). But, of course, a defendant “does not have an unfettered right to offer evidence that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence.” United States v. Blackwell, 459 F.3d 739, 753 (6th Cir.2006) (internal alterations and quotation marks omitted). Instead, “the Constitution permits judges to exclude evidence that is repetitive, only marginally relevant or poses an undue risk of harassment, prejudice, or confusion of the issues.” Holmes, 547 U.S. at 326-27, 126 S.Ct. 1727 (internal alterations and quotation marks omitted); United States v. Humphrey, 608 F.3d 955, 962 n. 3 (6th Cir.2010). And even “erroneous evidentia-ry rulings rarely constitute a violation of a defendant’s right to present a defense.” Hardy, 586 F.3d at 1044. In fact, the exclusion of defense evidence violates a defendant’s constitutional right to present a defense only where it is “arbitrary” or “disproportionate”; that is, where “important defense evidence” is excluded without serving “any legitimate interests” or in a manner that is “disproportionate to the ends that [the rationale for exclusion is] asserted to promote.” Holmes, 547 U.S. at 324, 325, 326, 126 S.Ct. 1727 (internal quotation marks omitted).
Because a defendant suffers a constitutional violation only if evidence in which the defense has a “weighty interest” is impermissibly excluded, see Ferensic v. Birkett, 501 F.3d 469, 475-76 (6th Cir. 2007), the arbitrary or disproportionate exclusion of defense evidence has constitutional significance only if the excluded evidence, “evaluated in the context of the entire record[,] creates a reasonable doubt that did not otherwise exist.” Blackwell, *454 459 F.3d at 753 (quotation marks and internal alteration omitted).
We readily conclude that the exclusion of Belcik’s testimony did not cause Reic-hert a constitutional injury. To be sure, the statements may have been admissible under Federal Rule of Evidence 803(3) as a statement of Reichert’s then-existing state of mind. However, the government correctly observes that Belcik admitted that he was in the Navy between 2004 and 2008 and that he was “away” in 2007 at the time of Reichert’s sale of the modified console and the search of his residence. Belcik never indicated that Reichert’s statements about the legality of his conduct were made at any time contemporaneous to 2007. Belcik’s proffered testimony, therefore, had only marginal relevance to whether Reichert believed in 2007 that his conduct was legal. And, of course, Reichert had at least one other avenue of putting his own statements and beliefs into evidence: by taking the stand himself. As a result, Reichert’s constitutional right to present a defense was not violated by the district court’s evidentiary ruling in this respect.
C. Special skills enhancement.
Finally, Reichert challenges the district court’s decision to enhance his sentence pursuant to U.S.S.G. § 3B1.3. Section 3B1.3 provides for a two-point enhancement if a defendant “abused a position of public or private trust, or used a special skill, in a manner that significantly facilitated the commission or concealment of the offense.” Id. While a district court’s factual findings underlying its application of the enhancement are reviewed for clear error, see United States v. Wilson, 345 F.3d 447, 449 (6th Cir.2003), “[t]he district court’s conclusion that skills possessed by a defendant are ‘special’ within the meaning of the Guideline ... is a mixed finding of law and fact that this court reviews de novo.” United States v. Godman, 223 F.3d 320, 322 (6th Cir.2000); see United States v. Tatum, 518 F.3d 369, 372 (6th Cir.2008).
Reichert contends that his skills are not “special” within the meaning of § 3B1.3. Emphasizing that he is a truck driver with only a high school diploma, Reichert points to § 3B1.3, cmt. n. 4, which explains, “ ‘Special skill’ refers to a skill not possessed by members of the general public and usually requiring substantial education, training or licensing. Examples would include pilots, lawyers, doctors, accountants, chemists, and demolition experts.” Id. Claiming that he “learned how to modify game consoles through trial and error, using how-to books and information from the internet,” Reichert argues that his ability to modify game consoles is not reasonably comparable to the skills listed in Application Note 4.
We cannot agree. In Godman, we observed that requisitely “special” skills may be acquired “through months (or years) of training, or the equivalent in self-tutelage. ” Godman, 223 F.3d at 323 (emphasis added). Nevertheless, we underscored that, to qualify for the enhancement, a defendant’s self-taught skills must be “particularly sophisticated.” Id. In this respect, emphasis is best placed “on the difficulty with which a particular skill is acquired.” Id. at 322. In Godman, for instance, we observed that the defendant’s familiarity with a computer scanner and experience in desktop publishing — which the defendant used to manufacture “fairly good quality” counterfeit bills, id. — could be replicated in fairly short order by “[m]ost persons of average ability” with “a minimum of difficulty.” Id. at 323. We therefore concluded that the defendant’s skills were not similar to those listed in Application Note *455 4 and were thus not special for purposes of the enhancement. Id.
Reichert’s skills, by contrast, are much more sophisticated than those at issue in Godman. Building on skills learned in a high school vocational program that taught him how to build his own computer systems from components, Reichert continued to modify consoles for almost half of a decade. As one of the prosecution’s expert witnesses testified at trial, modification of a game system can be a “pretty complicated process,” requiring both familiarity with consoles’ specialized circuitry and the technical deftness to install the modification chip without damaging the delicate circuit board. Over time, Reichert became exceptionally skilled at making these modifications, eventually serving as a moderator of a specialized internet discussion forum that was largely dedicated to console modification. In fact, Reichert was lauded within the gaming community as one of a very few individuals who knew a work-around for one of the most complicated modifications, and his expert assistance was actively sought out and paid for by gamers who had attempted to modify consoles on their own but were unable to do so or who were trying to prevent console manufacturers from detecting that their consoles had been modified. At one point, Reichert even cautioned that certain types of modifications were “not for ... normal people” because a modifier could “[sjcrew stuff up” if he was “not careful.”
This evidence suggests what we did not find in Godman: that Reichert’s specialized abilities could not be duplicated by “[mjost persons of average ability” with “a minimum of difficulty.” Godman, 223 F.3d at 323. Although we agree with Reichert that his skills were not as sophisticated as those at issue in United States v. Petersen, 98 F.3d 502, 504-07 (9th Cir.1996), where the defendant’s self-taught computer skills enabled him to hack into the secure computer systems of major financial institutions, the record here demonstrates that Reichert’s skill with computer hardware and specialized game console components was substantially more difficult to acquire than the mere familiarity with desktop publishing that was present in Godman. See United States v. Berry, 717 F.3d 823, 835 (10th Cir.2013) (ability to drive an eighteen-wheeler truck was sufficiently “special” where the driver possessed almost five years of truck-driving experience in addition to the basic “small potatoes” training initially required). The district court’s findings with respect to Reichert’s self-training, ability, and sophistication support the determination that his console-modification skills are “special.” Accordingly, the district court did not err in applying § 3B1.3’s special skills enhancement to Reichert.
III.
Having discerned no reversible error, we affirm Reichert’s conviction and sentence.

. The government does not argue in this case that the willfulness requirement is met by a defendant’s knowledge that the technology trafficked in was primarily designed for purposes known to be illegal.

. Because the pertinent willfulness and deliberate ignorance principles were "substantially covered by the actual jury charge,” the district court did not abuse its discretion in declining to give Reichert's proposed instruction instead of the one actually used. United States v. Blanchard, 618 F.3d 562, 573 (6th Cir.2010) (internal quotation marks omitted).