NOT RECOMMENDED FOR PUBLICATION
File Name:  15a0110n.06

No. 14-5505

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Feb 06, 2015
DEBORAH S. HUNT, Clerk

| | |
|---|---|
| MICHELLE SHOEMAKER, | ) |
| | ) |
| Petitioner-Appellant, | ) |
| | ) |
| v. | ) |
| | ) |
| BRENDA JONES, | ) |
| | ) |
| Respondent-Appellee. | ) |
| | ) |
| | ) |

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF TENNESSEE

BEFORE:  SUHRHEINRICH and GRIFFIN, Circuit Judges; and LEITMAN, District Judge.[*]

GRIFFIN, Circuit Judge.

Tennessee prisoner Michelle Shoemaker appeals the denial of her 28 U.S.C. § 2254 habeas corpus petition, contending (1) that her trial attorney was unconstitutionally ineffective for failing to adequately advise her about the prosecution's offer of a fifteen-year plea deal, and (2) that her constitutional right to present a defense was violated by the exclusion of certain witness testimony corroborating her explanation for why she fled to Mexico on the eve of her trial.  We affirm.

I.

Shoemaker was convicted by a jury in Tennessee state court on several charges, including first-degree murder, in connection with her role in the murder of her stepfather by an

---

[*]The Honorable Matthew F. Leitman, United States District Judge for the Eastern District of Michigan, sitting by designation.

acquaintance, allegedly in a plot to share the proceeds of his life insurance policy. *See State v. Shoemaker*, No. M2005-02652-CCA-R3-CD, 2006 WL 3095446, at *1 (Tenn. Crim. App. Nov. 2, 2006) (*Shoemaker I*). She was sentenced to life in prison. *Id.*

Shoemaker's conviction was upheld on appeal, despite her argument that the exclusion of certain corroborating witness testimony kept her from exercising her constitutional right to present a defense. *Id.* at *11. She subsequently pursued state post-conviction relief, arguing that her trial counsel performed ineffectively by failing to reasonably communicate to her the prosecution's fifteen-year plea offer. The state court denied relief, as did the state appellate court. *See Shoemaker v. State*, No. M2009-00472-CCA-R3-CD, 2010 WL 1462527, at *4 (Tenn. Crim. App. Apr. 13, 2010) (*Shoemaker II*).

Shoemaker then filed a 28 U.S.C. § 2254 petition in the district court, claiming in her amended petition that she received ineffective assistance of counsel and that her constitutional right to present a defense had been violated at her trial. The district court denied her petition but granted a certificate of appealability on her claims. Shoemaker appeals.

## II.

On appeal, Shoemaker reasserts her claims that her trial attorney was unconstitutionally ineffective and that her constitutional right to present a defense was violated by the exclusion of the corroborating witness testimony.

We review Shoemaker's assertions in light of the substantial deference owed to the state court's decision. Section 2254(d) restricts our authority to remedy state-court error, permitting habeas corpus relief to a state prisoner only where there is an "extreme malfunction[ ]" in the state criminal justice process rather than serving as "a substitute for ordinary error correction through appeal." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011) (citation omitted). The

statute thus provides that a state prisoner's § 2254 petition may not be granted unless the state court's adjudication of her claims on the merits either

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The Supreme Court has repeatedly instructed that a state court's resolution of an issue is not necessarily unreasonable, even if it is incorrect. "[A]n unreasonable application of [the Supreme Court's] holdings must be objectively unreasonable, not merely wrong; even clear error will not suffice." *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014) (internal quotation marks omitted). In other words, there is a difference between being wrong and being objectively unreasonable. *See Harrington*, 131 S. Ct. at 786. To prevail under § 2254, the petitioner "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786–87; *Williams v. Bauman*, 759 F.3d 630, 635 (6th Cir. 2014).

A.

Given the deference owed to the state court's resolution of her claims, Shoemaker's allegation that she received ineffective assistance of counsel with respect to her rejection of the prosecution's plea offer does not withstand scrutiny. As Shoemaker concedes, "'[c]learly established federal law,' for the purposes of § 2254(d)(1), refers to rulings of the United States Supreme Court in place at the time of 'the last state-court adjudication on the merits.'" *Lovins v.*

-3-

*Parker*, 712 F.3d 283, 293 (6th Cir. 2013) (quoting *Greene v. Fisher*, 132 S. Ct. 38, 45 (2011)). The Tennessee state courts adjudicated the merits of Shoemaker's ineffective assistance claim in her post-conviction proceeding in 2010. *See Shoemaker II*, 2010 WL 1462527, at *4. The Supreme Court's more recent holdings in *Missouri v. Frye*, 132 S. Ct. 1399 (2012), and *Lafler v. Cooper*, 132 S. Ct. 1376 (2012), are therefore unavailable to support Shoemaker's claim. *See also In re Liddell*, 722 F.3d 737, 738 (6th Cir. 2013) (holding that neither *Frye* nor *Lafler* is a new rule of constitutional law that is retroactively applicable to cases on collateral review).

Instead, the only pertinent case that the state court needed to apply was *Strickland v. Washington*, 466 U.S. 668 (1984), which established the basic two-part test for ineffective assistance: a showing by the petitioner both "that counsel's representation fell below an objective standard of reasonableness" and that the deficient performance prejudiced the defense. *Id.* at 688.

Shoemaker's contention that the state court unreasonably applied the rule of *Strickland* is predicated on her argument that the state court's decision "was based on an unreasonable determination of the facts" in light of the evidence that was before it. 28 U.S.C. § 2254(d)(2). According to Shoemaker, the evidence admitted in her state post-conviction proceeding showed that one of her two trial attorneys, Edwin Sadler, continually advised her to reject the prosecution's fifteen-year plea offer despite being aware that the prosecution's case against her was growing increasingly strong as trial approached. In Shoemaker's view, Sadler's advice to reject the plea offer and take her chances at trial was so deficient that the state court unreasonably applied *Strickland* to reject her ineffective assistance of counsel claim.

Shoemaker's depiction of the relevant facts ignores the contrary evidence in the record. In the post-conviction proceedings, Sadler testified that he advised Shoemaker that the

prosecution's fifteen-year offer was "a pretty reasonable offer" but that his client refused to accept it because "[s]he felt . . . that we could convince a jury" that she was innocent. Sadler further testified that when he learned about a particularly damaging tape-recorded statement that Shoemaker had made, he tried to convince Shoemaker that she should take "a little more time to think about her plea," but she persisted in her desire to go to trial. Sadler never told Shoemaker that the trial would be "a piece of cake." In fact, he was "very scared" about how it would turn out for her. According to Sadler, it was Shoemaker who wanted to go to trial, not him. Further, Sadler testified that mid-way through the trial, he saw the writing on the wall and asked Shoemaker if she wanted him to ask the prosecution if its fifteen-year offer was still on the table, but Shoemaker declined, believing that the defense "was winning" the trial.

The testimony at Shoemaker's post-conviction hearing reflected a dueling version of events told by a convicted defendant and her former attorney. The state court concluded that "[b]asically, the issue comes down to a credibility determination between trial counsel's testimony at the hearing and Petitioner's testimony at the hearing," *Shoemaker II*, 2010 WL 1462527, at *4. We agree.

Under AEDPA, "a determination of a factual issue made by a State court shall be presumed to be correct" in § 2254 proceedings, and a petitioner can rebut the presumption of correctness only by producing "clear and convincing evidence" that the state court's factual determination was wrong. 28 U.S.C. § 2254(e)(1). Shoemaker argues that the clear-and-convincing standard is met by her assertion that the state court "overlooked" the testimony of Shoemaker's second trial attorney—Samuel Harris—which Shoemaker views as partially corroborating her version of events. But she is mistaken.

Harris's testimony would affect the state court's credibility determination only if it was "clear and convincing" proof that Shoemaker's version of events was true and Sadler's was not. But Harris's testimony sheds almost no new light on Sadler's version of events. In fact, it does not even corroborate Shoemaker's story to any significant degree. According to Harris, Shoemaker "wanted to go to trial" and "had unrealistic hopes" of success. "But," continued Harris, "I thought both of them—and this is a little criticism of Edwin [Sadler], I thought boy, we are going to have to get lucky because some of this evidence is overwhelming."

As is evident, Harris identified Shoemaker—not Sadler—as holding "unrealistic hopes" of success at trial. Harris's critique of Sadler, on the other hand, is ambiguous. In any event, Harris did not testify that Sadler urged Shoemaker to reject the prosecution's plea offer. His testimony does not discredit Sadler's testimony to such an extent that the state court's decision to accept Sadler's version of events was unreasonable. In fact, Harris's suggestion that the defense could have succeeded at trial if it was "lucky" only further undermines Shoemaker's contention that Sadler behaved blatantly unreasonably, even assuming that Sadler did not actively discourage her from exercising her right to trial by jury.[1]

Thus, § 2254(e) requires us to defer to the state court's factual finding that Sadler, not Shoemaker, accurately described their pretrial discussions. Given that Shoemaker's ineffective-assistance claim depends on opposite factual assumptions—namely, that she would have taken the plea deal but for Sadler's urging her not to—her claim that she is entitled to relief under § 2254 has no merit.

---

[1]Shoemaker's attempt to prove a similar point by relying upon an affidavit submitted by a fellow prisoner is unavailing both because the affidavit consists of multiple levels of hearsay and because the affidavit was never presented to the state courts and is therefore categorically barred by *Cullen v. Pinholster*, 131 S. Ct. 1388, 1400 & n.7 (2011).

B.

Next, Shoemaker argues that her constitutional right to present a defense was violated when the state trial court refused to permit her to cross-examine a prosecution witness about Shoemaker's flight to Mexico on the eve of her trial. Shoemaker's explanation for fleeing the country was that she believed that the Masons—of which the murder victim was a member—had a contract out on her life for her role in the murder. Jessica Roethlisberger, who was examined out of the presence of the jury, was asked whether she was "present when someone advised [Shoemaker] that there was a contract on her life[.]" Roethlisberger answered,

> I don't know when it was first told to her, but when I was up visiting one day . . . and I stopped over to see her, it was discussed, and her boyfriend at the time told me about it and said that he was—said that the Masons had a contract out.

The trial court excluded Roethlisberger's proposed testimony, ruling that it was inadmissible hearsay. Later, Shoemaker testified on her own behalf and was allowed to inform the jury that she attempted to flee the country because her boyfriend "told me that my life had been threatened and that [the Masons] were wanting to kill me."

Shoemaker now contends that the state court's hearsay ruling was incorrect and that her inability to rely on Roethlisberger's corroborating testimony unconstitutionally denied her the right to present a defense. Shoemaker made this argument to the state appellate court in her direct appeal, but the state court rejected her claim on the merits. *See Shoemaker I*, 2006 WL 3095446, at *10. Following our review, we hold that the state court did not unreasonably rule that the exclusion of Roethlisberger's testimony did not violate Shoemaker's constitutional rights.

To be sure, "[w]hether rooted directly in the Due Process Clause of the Fourteenth Amendment or in the Compulsory Process or Confrontation Clauses of the Sixth Amendment,

-7-

the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense." *United States v. Reichert*, 747 F.3d 445, 453 (6th Cir. 2014) (quoting *Holmes v. South Carolina*, 547 U.S. 319, 324 (2006)). Nevertheless, a defendant "does not have an unfettered right to offer evidence that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence." *United States v. Blackwell*, 459 F.3d 739, 753 (6th Cir. 2006) (internal alterations and quotation marks omitted). Instead, "the Constitution permits judges to exclude evidence that is repetitive, only marginally relevant or poses an undue risk of harassment, prejudice, or confusion of the issues." *Holmes*, 547 U.S. at 326–27 (internal alterations and quotation marks omitted); *United States v. Humphrey*, 608 F.3d 955, 962 n.3 (6th Cir. 2010).

Notably, even "erroneous evidentiary rulings rarely constitute a violation of a defendant's right to present a defense." *United States v. Hardy*, 586 F.3d 1040, 1044 (6th Cir. 2009). "[T]he exclusion of defense evidence violates a defendant's constitutional right to present a defense only where it is 'arbitrary' or 'disproportionate'; that is, where 'important defense evidence' is excluded without serving 'any legitimate interests' or in a manner that is 'disproportionate to the ends that [the rationale for exclusion is] asserted to promote.'" *Reichert*, 747 F.3d at 453 (quoting *Holmes*, 547 U.S. at 324, 325, 326). Further, because a defendant suffers a constitutional violation only if evidence in which the defense has a "weighty interest" is impermissibly excluded, *see Ferensic v. Birkett*, 501 F.3d 469, 475–76 (6th Cir. 2007), the arbitrary or disproportionate exclusion of defense evidence has constitutional significance only if the excluded evidence, "evaluated in the context of the entire record[,] creates a reasonable doubt that did not otherwise exist." *Blackwell*, 459 F.3d at 753 (quotation marks and internal alteration omitted).

Moreover, Shoemaker's claim arises in the setting of § 2254. Although Shoemaker claims that the state court misapplied its own hearsay rules, whether the state court's interpretation of its own state-law rules of evidence was correct is not a question that may be reached by a federal court on habeas review. Absent a due process violation or other federal-law infirmities, state courts are the ultimate arbiters of their evidentiary rules. In any event, we cannot grant relief under § 2254 for a state-law error. *Jackson v. Smith*, 745 F.3d 206, 214 (6th Cir. 2014). The "clearly established Federal law" that is pertinent to the present inquiry is not a state-law evidentiary rule but is simply the constitutional prohibition against the arbitrary or disproportionate exclusion of evidence that is "important" to the defense. *Loza v. Mitchell*, 766 F.3d 466, 485 (6th Cir. 2014) (citations omitted).

Here, the state court did not act unreasonably when it concluded that the exclusion at issue here "was not critical to the defense" and therefore did not violate the federal constitution. *Shoemaker I*, 2006 WL 3095446, at *11. Roethlisberger's testimony may well have been useful to corroborate Shoemaker's explanation for her trek to the Texas border. But it pertained only to a collateral matter and said nothing about Shoemaker's culpability for the murder in question. Nor did the exclusion of this testimony render Shoemaker unable to explain to the jury why she fled to Mexico: she was able to tell her story when she testified on her own behalf. *See Reichert*, 747 F.3d at 454 (no denial of the defendant's right to present a defense when the defendant "had at least one other avenue of putting his own statements and beliefs into evidence: by taking the stand himself"). Not every adverse evidentiary ruling is a constitutional violation, and here the state court reasonably concluded that the exclusion of Roethlisberger's testimony did not deprive Shoemaker of a meaningful opportunity to present a defense.

III.

For these reasons, we affirm the judgment of the district court.