**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 16a0574n.06

Case No. 15-2410

|  |  |  |
|---|---|---|
| **UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT** | | **FILED**<br>Oct 19, 2016<br>DEBORAH S. HUNT, Clerk |

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| TERRY MYR, | ) | DISTRICT OF MICHIGAN |
| | ) | |
| Defendant-Appellant. | ) | |

**O P I N I O N**

BEFORE: KEITH, McKEAGUE, and WHITE, Circuit Judges.

**DAVID W. McKEAGUE, Circuit Judge.** Terry Myr, a self-employed auto mechanic with a professed interest in tax-protester theories, was convicted of one count of tax evasion, 26 U.S.C. § 7201, and four counts of willful failure to file individual income tax returns, 26 U.S.C. § 7203. Myr claims that the district court abused its discretion and violated his constitutional rights by excluding from evidence a civil complaint in an unrelated case in which the government accused a tax preparer Myr used of falsifying the returns of other customers. He also claims that the court improperly instructed the jury on the meaning of "proof beyond a reasonable doubt." We **AFFIRM**.

I

Terry Myr ran an auto-repair and brokerage business specializing in rare and exotic cars from a farm in Port Huron, Michigan. When he was not fixing luxury vehicles, Myr spent his free time studying the federal income tax laws. His reading list included the Internal Revenue Code as well as various tax-protester pamphlets and books which opined that the income tax applied to corporations but was "voluntary" or "unconstitutional" as applied to individuals.

Myr filed individual returns until 2001. When the Internal Revenue Service audited his 2000 and 2001 returns, however, it determined that he had underreported his business's income. After this audit began, Myr still asked his local accountant to prepare returns for 2002 and 2003. He never filed those returns though; in fact, he stopped filing individual returns altogether after 2001. In 2005, after it completed its audit report, the IRS assessed nearly $200,000 in taxes, interest, and penalties on Myr for the years 2000 to 2003.[1]

In May 2007, to recoup this tax debt, the IRS notified Myr that it would issue a federal tax lien against his property. The government contends that at this point, Myr began to take evasive measures to conceal his assets. He started accepting only cash or pre-paid credit cards for his services and mostly ceased using his personal bank account. In September 2007, he conveyed real property to a limited-liability company in consideration for cash and gold coins.

Most relevant to his appeal, in 2009 Myr sold a rare, original Ferrari racing engine to a Belgian buyer for $610,000 and concealed the proceeds. Myr instructed the buyer to pay the purchase price to a bank account that he had opened that week for On Track Group, Inc., a Nevada nominee corporation Myr had formed the week before the sale was scheduled to occur. Some months after On Track's account received the money, Myr used about $330,000 to buy

---

[1] The audit also revealed that Myr had an undisclosed Costa Rican bank account.

gold coins, which remained hidden from the IRS at least through his trial. Another $160,000 flowed to an account he set up for a second nominee, Hosea Holdings Trust. From that account, he withdrew the funds by writing over 30 checks made out to cash.

In 2010, Myr hired Denise Pope from Uneek Business Solutions to prepare On Track's 2009 corporate return. Although Pope operated out of Detroit, about an hour south of where Myr lived, Myr testified that he chose Pope based on a friend's recommendation. He drove to Detroit twice to meet with Pope or other Uneek employees concerning On Track's return. In June 2010, he filed the return after signing under penalty of perjury, as the form demands, that he had reviewed its contents.

Myr would later testify that he never reviewed the return's contents. As it turned out, the return had underreported On Track's gross receipts from the engine sale by $110,000, deducted $150,000 for salaries paid to non-existent employees, and wrote off $330,174 in bad debt—the exact amount Myr spent on gold coins. Based on this underreporting, On Track claimed to owe no federal income tax for 2009.

In May 2013, a grand jury indicted Myr on one count of evading the tax debt assessed against him for byas a result of the audit for the years 2000 through 2003, *see* 26 U.S.C. § 7201, and four counts of willful failure to file individual tax returns for the years 2007 through 2010, *see* 26 U.S.C. § 7203. Indictment, R. 1, PID 1, 3–4. For the evasion count, the indictment listed three representative intentionally evasive acts: (a) conveying his property to a nominee entity after notice that the IRS intended to place a tax lien on it; (b) using nominee entities, including On Track and Hosea Holdings, to conceal his income and assets; and (c) dealing in cash. *Id.* at 3, PID 3.

Myr went to trial on these counts in April 2015. All the counts required the government to prove Myr acted "willfully," meaning that he acted deliberately in violation of a known legal duty, and that he did not act in good faith. During his trial, Myr's defense centered on his subjectively held legal theories regarding his liability to pay federal income tax. The jury instructions included, at Myr's request, the following: "In the late 1990s and the early 2000s, Myr engaged in a study of the federal income tax laws, and as a result, concluded that he was not required to file federal income returns and that he did not owe such taxes. Myr asserts in that failing to pay income taxes assessed against him by the IRS and failing to file income tax returns, he did not act willfully and his beliefs were held in good faith." Tr., Vol. 6 at 111, R. 50, PID 1165. During closing arguments, Myr described at length the information and bases that led him to form these beliefs.

During the trial, when Myr testified that he never reviewed On Track's false return before filing it, he attempted to introduce a civil complaint that the Department of Justice had filed against On Track's tax preparer, Pope. The complaint contained allegations that Pope had falsified returns for some customers who disclaimed ever supplying her with bad information or knowing their returns were false. In one paragraph, for example, the complaint alleges that Pope "falsely reported that [a couple] made $6,000 in cash charitable contributions in both 2010 and 2011, and $5,035 in non-cash charitable contributions in 2010, and $5,000 in non-cash charitable contributions in 2011. In fact, the [couple] did not make charitable contributions in those amounts, and they did not tell Pope or Jones that they had done so." Mot. for New Trial, R. 35-1 (Pope Complaint), ¶ 18, PID 229.

The district court conditioned the complaint's admission on Myr showing its relevance, saying it would not be admitted unless it contained information "specific to [On Track's] return."

- 4 -

Tr., Vol. 5 at 117–20, R. 49, PID 1028–31. As nothing in the complaint referred to that return, the court excluded it as irrelevant to Myr's defense. Myr moved for a new trial based on the district court's exclusion of the evidence. The district court denied the motion, reiterating that the Pope complaint did not tend to make any "facts in th[e] case more or less probable." *United States v. Myr*, No. 14-20633, 2015 WL 5042321, at *5 (E.D. Mich. Aug. 26, 2015). This appeal followed.

II

Myr uses the district court's decision to exclude the Pope complaint from evidence as the basis for two challenges to his conviction. The first asks us to consider the decision as an evidentiary matter under Rule 401. The second asks us to address it as a constitutional issue. Although these challenges differ somewhat conceptually, both rely on common propositions: that the complaint supported Myr's defense and its exclusion possibly affected the trial's outcome. We find no reversible error under either theory because the complaint offered—if anything— equivocal evidence on an insignificant point.

We review the district court's decision that the complaint was irrelevant for "abuse of discretion." *See United States v. Ray*, 803 F.3d 244, 257 (6th Cir. 2015). "Generally, we will not disturb a court's evidentiary ruling unless we reach a definite and firm conviction that the court made a clear error of judgment in weighing the relevant factors or that the court improperly applied the law." *United States v. Antonio Ray*, 597 F. App'x 832, 839 (6th Cir. 2015) (citing *United States v. Stepp*, 680 F.3d 651, 660 (6th Cir. 20012)). But even if a court's ruling was clearly in error, a merely harmless error leaves a verdict undisturbed. *United States v. Vasilakos*, 508 F.3d 401, 406 (6th Cir. 2007). We reverse "only if the erroneous evidentiary ruling affected the outcome of the trial." *United States v. Marrero*, 651 F.3d 453, 471 (6th Cir. 2011).

Myr's related contention, that the evidence's exclusion violated his constitutional right to present a meaningful defense, is an issue we review de novo. *See Holmes v. South Carolina*, 547 U.S. 319, 324 (2006) (holding that, whether rooted in the Due Process Clause or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, a defendant has a right to a "meaningful opportunity to present a complete defense"); *United States v. Reichert*, 747 F.3d 445, 453 (6th Cir. 2014) (applying de novo review to an appeal based on *Holmes*). A defendant only suffers a violation of his constitutional rights in this context, however, "if evidence in which the defense has a weighty interest is impermissibly excluded." *Id.* at 453 (quotation marks and citations omitted). That is, "only if the excluded evidence, evaluated in the context of the entire record[,] creates a reasonable doubt that did not otherwise exist." *Id.* (quotation marks and citations omitted). The upshot of these standards: to warrant reversal, there must be at least a reasonable possibility the complaint could have changed Myr's verdict.

As an initial matter, it is important to keep in mind that Myr was not charged with filing a false return. Rather, he was charged with willfully evading the tax obligation assessed in May 2007 for tax years 2000 to 2003. The On Track tax return—which was prepared by Pope, underreported the $610,000 proceeds from the engine sale, and took unjustified deductions—was simply one piece of evidence offered in support of the Government's theory that Myr hid assets to avoid paying the amounts assessed for back taxes and penalties. The On Track return had no relevance to the charges that Myr willfully failed to file his individual income tax returns, and thus the Pope complaint also had no relevance to those charges.

Assuming arguendo that the Pope complaint would have decreased the evidentiary value of the On Track return in relation to the evasion charge, it is clear that the complaint's exclusion, even if erroneous, was harmless. Myr equates the complaint's exclusion to a total inability to

offer a defense on willfulness. *See United States v. Canty*, 499 F.3d 729, 734 (7th Cir. 2007) (holding that the decision to forbid defendant in a counterfeiting trial from even testifying about his motive for printing fake bills was harmful when intent was the only issue at trial). At multiple points in his briefing, he asserts that the complaint was "critically important" or related "directly" to his intent. And evidence going to intent should particularly matter here, he reminds us, because lack of intent was his only defense. *See id.*

But these bare assertions belie what actually happened at trial. The jury heard Myr's intent defense in detail and received instructions on his theory. They also heard him testify about his role in the filing of On Track's return—an event that played a minor role in the proceedings. The indictment alleged three intentionally evasive acts as part of the tax-evasion charge: (1) conveying his property to a nominee entity after notice that the IRS intended to place a tax lien on it; (2); using nominee entities, including On Track and Hosea Holdings, to conceal his income and assets; and (3) dealing in cash. The allegations surrounding the Ferrari transaction— the use of nominee entities, the dealing in gold coins, the bank-account withdrawals with checks written to cash, and, yes, the On Track return—merely evidenced a single act that satisfied the evading charge. The government presented overwhelming evidence on all three alleged intentionally evasive acts. And it specifically offered voluminous evidence that Myr violated a known legal duty—to pay his tax debt—in bad faith: it presented multiple direct communications where-by the IRS informed Myr that, indeed, he was liable for the federal income tax.

The falsity of the On Track tax return was offered by the government as one piece of evidence showing that Myr had used nominees to conceal income, itself one of three core allegations underlying the single tax-evasion charge. Had the complaint been admitted into evidence, it would have been—*at most*—evidence that minimally rebutted minor evidence

related to the tax-evasion charge. On this record, admitting the complaint into evidence would not have affected the verdict on this or any other charge.

III

In his final challenge, Myr asserts the trial court abused its discretion by using the Sixth Circuit's pattern jury instructions on "proof beyond a reasonable doubt." He also says it erred in refusing his requested addendum: that reasonable doubt encompasses the concept of an "abiding conviction of the truth of the charge to a near certainty."

"A trial court has broad discretion in crafting jury instructions and does not abuse its discretion unless the jury charge fails accurately to reflect the law." *United States v. Geisen*, 612 F.3d 471, 485 (6th Cir. 2010) (quotation marks and citations omitted). "Thus, we may reverse the jury's conviction only if the instructions, viewed as a whole, were confusing, misleading, or prejudicial." *Id.* (quotation marks and citations omitted).

This circuit's pattern jury instructions provide in relevant part: "'Proof beyond a reasonable doubt' is proof so convincing that you would be willing to rely and act on it without hesitation in the most important of your own affairs." Sixth Circuit Model Instruction 1.03 (April 2015). Myr argues that the comparison to one's own "affairs" tends to mislead the jury and lower the government's burden. This formulation has attracted some criticism. *See, e.g., Victor v. Nebraska*, 511 U.S. 1, 24–25, (1994) (Ginsburg, J., concurring); *United States v. Gordon*, 634 F.2d 639, 644 (1st Cir. 1980); Federal Judicial Center, Commentary to Instruction 21 (1987). Mainly, critics believe it leads a jury to compare its decision on a verdict to "choosing a spouse, buying a house, borrowing money, or the like," all of which involve a "degree of uncertainty and risk taking" that is "wholly unlike" the decision jurors ought to make. Federal Judicial Center, Commentary to Instruction 21.

The Supreme Court has held, however, that similar instructions "correctly conveyed the concept of reasonable doubt to the jury." *Holland v. United States*, 348 U.S. 121, 140 (1954). In *Holland*, the district court defined "reasonable doubt" to mean "the kind of doubt . . . which you folks in the more serious and important affairs of your own lives might be willing to act upon." *Id.* The Court did not bless the *Holland* district court's instruction without exception, however. To define "reasonable doubt," rather than *proof beyond* a reasonable doubt, the Court noted, the district court should have phrased its instruction in terms of what would make a person "hesitate to act." *See id.* But the Court saw no actual risk that the jury misunderstood the instruction and so it passed muster. *Id.*

Faced with this authority, Myr argues that our circuit's instructions vary materially from the language approved in *Holland*. It is an error, he contends, to instruct the jury that "proof beyond a reasonable doubt" is such proof that they "would act on it without hesitation." Instead, he argues the court must instruct a jury that "reasonable doubt" is a doubt that "would cause them to hesitate."

We consider Myr's action-versus-inaction point to be a distinction without difference. This view is echoed by a leading treatise on jury instructions: "What is a reasonable doubt? . . . It is a doubt that would cause a reasonable person to hesitate to act in a matter of importance in his or her personal life. Proof beyond a reasonable doubt must, therefore, be proof of a convincing character that a reasonable person would not hesitate to rely upon in making an important decision." John S. Siffert, 1-4 Modern Federal Jury Instructions-Criminal P 4.01 (Instruction 4-2 Reasonable Doubt).

Because the jury instructions correctly stated the law, we need not consider Myr's proposed additions. *See Victor*, 511 U.S. at 5 ("[S]o long as the court instructs the jury on the

necessity that the defendant's guilt be proved beyond a reasonable doubt . . . , the Constitution does not require that any particular form of words be used in advising the jury of the government's burden of proof.").

IV

For the reasons stated above, the district court's judgment is **AFFIRMED**.