
IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs March 14, 2017

## MICHELLE DAWN SHOEMAKER v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Jackson County**
**No. 02-160    John D. Wootten, Jr., Judge**

_____

### No. M2016-01146-CCA-R3-ECN

_____

A Jackson County Criminal Court Jury convicted the Petitioner, Michelle Dawn Shoemaker, of first degree premeditated murder, conspiracy to commit first degree premeditated murder, solicitation of first degree premeditated murder, and tampering with evidence, and she received an effective life sentence. Subsequently, the Petitioner filed a petition for a writ of error coram nobis, alleging newly discovered evidence in the form of an affidavit from a co-conspirator, who was also the Petitioner's mother, stating that the Petitioner was not involved in the victim's death. The coram nobis court summarily denied the petition, and the Petitioner appeals. Based upon the record and the parties' briefs, we affirm the judgment of the coram nobis court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and CAMILLE R. MCMULLEN, JJ., joined.

Michelle Dawn Shoemaker, Pro Se, Memphis, Tennessee.

Herbert H. Slatery III, Attorney General and Reporter; Alexander C. Vey, Assistant Attorney General; Tom P. Thompson, Jr., District Attorney General; and Howard L. Chambers, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

### I.  Factual Background

This case relates to a conspiracy by the Petitioner; her husband, Dean Shoemaker; her mother, Carol Kerr; and Robert Foutch, who lived with the Petitioner and her husband for a period of time, to kill the Petitioner's stepfather, Jim Kerr, and share $64,000 in life insurance proceeds received by Mrs. Kerr. At trial, the State presented

four written statements given by the Petitioner to the police after the victim's death. See State v. Michelle Shoemaker, No. M2005-02652-CCA-R3-CD, 2006 WL 3095446, at *2 (Tenn. Crim. App. at Nashville, Nov. 2, 2006), perm. to appeal denied, (Tenn. Mar. 12, 2007). In her first statement, the Petitioner claimed that on June 29, 2002, she and Mrs. Kerr went shopping, returned to Mrs. Kerr's home, and found the victim deceased. Id. In her second statement, the Petitioner claimed that after she and Mrs. Kerr returned to the Petitioner's home from shopping, Dean Shoemaker told them that Mr. Foutch had killed the victim. Id. She stated that she went with her husband and Mr. Foutch to dispose of evidence on July 4, 2002, and that Mrs. Kerr claimed to have hired Mr. Foutch to kill the victim. See id. In her third statement, the Petitioner said that prior to the victim's death, Mrs. Kerr had complained about him and had made statements about hoping he would get hurt at work or run over by a tractor. See id. at *3. In her final statement, the Petitioner said that the night before the victim's death, she, her husband, Mrs. Kerr, and Mr. Foutch decided that Mr. Shoemaker and Mr. Foutch would go to the victim's home the next day and kill the victim while the Petitioner and Mrs. Kerr were shopping. Id. The Petitioner stated that she "'never thought they would really go through with it'" and that she did not tell the truth in her previous statements because she was afraid of what would happen to her if she did so. Id.

Dean Shoemaker pled guilty to second degree murder in exchange for a thirty-five-year sentence to be served as a Range II offender. Id. at *4. He testified at the Petitioner's trial and implicated her in conspiring to kill the victim. See id. at *5. Mr. Foutch also pled guilty to murder in exchange for a thirty-five-year sentence and testified at the Petitioner's trial. See id. at *6. During his testimony, he stated that he heard Mrs. Kerr say she would pay someone to get rid of the victim, that the Petitioner and Dean Shoemaker approached him about killing the victim, and that the "plan" was for the Petitioner and Mrs. Kerr to go shopping while Mr. Shoemaker and Mr. Foutch went to the Kerr home and killed the victim. Id. Mr. Foutch said that on the day of the victim's death, the victim was outside near his truck when Mr. Foutch hit him on the back of the head and shot him three or four times. Id. Mr. Shoemaker then shot the victim one time. Id.

The Petitioner testified at trial that prior to the victim's death, her mother had been saying that she no longer wanted to be with him and that she wished he would have an accident or that someone would kill him. Id. at *7. The Petitioner, her husband, and Mr. Foutch discussed killing the victim, but the Petitioner never took the discussions seriously. Id. The night before the victim's death, the Petitioner heard her husband, her mother, and Mr. Foutch talking about how to kill the victim, and the Petitioner told them that she did not want to hear anymore about it. Id. The next day, the Petitioner and her mother went on a pre-planned trip to Wal-Mart. Id. While they were gone, the Petitioner's husband telephoned her and told her to hurry home. Id. When the Petitioner and her mother returned to the Petitioner's residence, the Petitioner's husband told her

something that made her think something might have happened to the victim. Id. She and her mother went to her mother's home and found the victim. Id.

On May 6, 2005, a Jackson County Criminal Court Jury convicted the Petitioner of first degree premeditated murder based upon a theory of criminal responsibility; conspiracy to commit first degree premeditated murder; solicitation of first degree premeditated murder; and tampering with evidence. On June 21, 2005, approximately six weeks after the verdicts, Carol Kerr entered a best interest plea, also known as an Alford plea, to second degree murder in exchange for a fifteen-year sentence to be served at 100%. According to the facts given by the State during the plea hearing, Mrs. Kerr was to keep one-half of the insurance proceeds received from the victim's death, and the Petitioner, Mr. Shoemaker, and Mr. Foutch were to divide the remaining half. The State advised the trial court that it spoke with the Petitioner prior to Mrs. Kerr's plea hearing and made no promises to the Petitioner about the Petitioner's sentences. The State also advised the court that the Petitioner wanted to testify against her mother and planned to testify at Mrs. Kerr's trial that Mrs. Kerr helped plan the victim's death, that Mrs. Kerr intended to share in the insurance money, and that "all of this between the four of them resulted in Mr. Kerr's death."

On July 25, 2005, the trial court ordered that the Petitioner serve concurrent sentences of life for first degree premeditated murder; twenty years for conspiracy to commit first degree premeditated murder, a Class A felony; eight years for solicitation of first degree premeditated murder, a Class B felony; and three years for tampering with evidence, a Class C felony. Id. at *1. The court merged the solicitation conviction into the murder conviction. Id. On direct appeal of the Petitioner's convictions, this court affirmed the judgments of the trial court. Id. at *11.

The Petitioner filed a timely petition for post-conviction relief, claiming that she received the ineffective assistance of counsel, in part, because trial counsel failed to communicate with her about a fifteen-year plea offer from the State. The post-conviction court held an evidentiary hearing and denied the petition, and this court affirmed the denial. Michelle Shoemaker v. State, No. M2009-00472-CCA-R3-CD, 2010 WL 1462527, at *5 (Tenn. Crim. App. at Nashville, Apr. 13, 2010), perm. to appeal denied, (Tenn. Aug. 25, 2010). Subsequently, the Petitioner filed a petition for a writ of habeas corpus in the United States District Court for the Middle District of Tennessee, again alleging that counsel was ineffective for failing to advise her adequately about the plea offer. The district court denied the petition, and the Sixth Circuit Court of Appeals affirmed the denial. Michelle Shoemaker v. Jones, 600 F. App'x 979, 980 (6th Cir. 2015).

On June 30, 2015, the Petitioner filed a petition for a writ of error coram nobis, alleging newly discovered evidence establishing her actual innocence. In support of that petition, she attached an affidavit, signed by Carol Kerr on March 30, 2015, claiming that

the Petitioner was not involved in the victim's death. Specifically, Mrs. Kerr stated as follows:

> I was never asked to testify at [the Petitioner's] trial, or I would have had no choice but to say the same things that are in this affidavit. I only wish that I had come forward before now. The only reason I did not was because I felt that Michelle had turned on me by stating I wanted my husband dead. So instead of telling the truth that she had nothing to do with his murder, I allowed her to be charged and convicted with his murder and did nothing to prevent this injustice. But over the past several years the burden of guilt that I have had to carry at allowing my only daughter to be wrongfully convicted for crimes of which she is innocent, has become more [than] I can bear. Therefore I come now in this affidavit with the truth.
>
> It is my sworn statement today that Michelle Dawn Shoemaker **never** took part in any planning of Jim's murder, even though she was present at various times when I would bring up the subject. Michelle did not conspire with me, **Dean Shoemaker** (my son-in-law) or **Robert "Frankie" Foutch** in this crime. She was never part of the plan to have Jim killed, nor did she "*hire*" *Frankie*. Michelle did not, nor was she going to receive any of the life insurance monies that I was supposed to get from Jim's death. It was never intended to [be] split four ways, *Frankie* was the **only** person, besides myself, that stood to gain any benefit whatsoever from Jim's death. I had no idea that '*Frankie*' was going to do what he did. That was not at all what he and I had discussed and agreed upon. The only thing Michelle was guilty of was being my daughter and Dean's wife, and trying to protect her children <u>after</u> the murder took place. Michelle is the only person that had no involvement in this crime, yet she received the harshest penalty.

The Petitioner argued in the petition that she was without fault in presenting the newly discovered evidence at the proper time, i.e., at trial, because she and her mother, who was awaiting trial at the time of the Petitioner's trial, had "completely antagonistic defenses and conflicting interests" and because her mother would have had to incriminate herself if she had testified at the Petitioner's trial. The Petitioner also argued that the one-year statute of limitations for filing the petition should be tolled.

On July 30, 2015, Special Agents Russ Winkler and James Scarboro of the Tennessee Bureau of Investigation met with Mrs. Kerr in the Mark H. Luttrell Correction Facility, and she gave another sworn statement in which she said the Petitioner did not know about the murder until "after the fact and did not plan it." She also stated that she did not tell anyone about the Petitioner's innocence previously because she was mad at Dean Shoemaker and because a fellow prisoner, since deceased, told her that no one would believe her. At the conclusion of her statement, she said,

> I am shocked that Michelle would confess to having any involvement in Jim's murder other than tampering with evidence. I truly believe as Michelle's mother that she had nothing to do with planning Jim's murder. I have no proof that would show you that Michelle had no involvement in planning his murder, but if Dean and Frankie would tell the truth then you would know.

On August 19, 2015, the State responded to the petition, noting that although Mrs. Kerr claimed the Petitioner was not involved in planning the victim's death, she acknowledged that she had no proof the Petitioner was not involved. The State argued that the coram nobis court should dismiss the petition because the purpose of a petition for a writ or coram nobis was "to bring to the attention of the Court some facts unknown at trial [that] if known would have resulted in a different judgment" and because "[a] statement given to help a daughter and then retracted upon further review is not a fact."

In a written order, the coram nobis court summarily denied the petition for a writ of error coram nobis. First, the court noted that a petition for a writ of error coram nobis was an extraordinary remedy and that the purpose of the writ was "to bring to the attention of the court some fact unknown to the Court which, if known, would have resulted in a different judgment." The court stated that "after examining the entire record and all allied papers as well as the record relating to all four defendants involved in the brutal murder of James Kerr that this petitioner and her mother have mended fences" and that the petition was "a blatant effort by the petitioner and her mother, Ms. Kerr, to concoct a means to free the petitioner." The court found that the evidence was not "newly discovered evidence" but evidence "just newly disclosed to this court." Finally, the court found that the Petitioner filed the petition well-beyond the one-year statute of limitations and that the three-step "'Burford Rule'" did not warrant tolling the statute of limitations.

## II. Analysis

The Petitioner claims that the coram nobis court erred by using the statute of limitations as a basis for denying the petition when the State did not raise the statute of limitations as an affirmative defense and that the court erred by concluding that due

process did not warrant tolling the statute of limitations. She also contends that the court erred by denying the petition without a hearing because the court "illogically" concluded that she and her mother had "mended fences" when nothing in Mrs. Kerr's statement reflected that they were angry with each other; that the court's conclusion that the petition was a "blatant effort . . . to concoct a means to free the petitioner" was an improper assessment of the evidence in light of Mrs. Kerr's sworn statement that the Petitioner was innocent; that the court improperly concluded that Mrs. Kerr's claim of the Petitioner's innocence did not constitute newly discovered evidence; and that the court used an improper standard in denying the petition. The State argues that the trial court properly denied the petition without a hearing. We agree with the State.

The writ of error coram nobis is codified in Tennessee Code Annotated section 40-26-105 and provides as follows:

> There is hereby made available to convicted defendants in criminal cases a proceeding in the nature of a writ of error coram nobis, to be governed by the same rules and procedure applicable to the writ of error coram nobis in civil cases, except insofar as inconsistent herewith . . . . Upon a showing by the defendant that the defendant was without fault in failing to present certain evidence at the proper time, a writ of error coram nobis will lie for subsequently or newly discovered evidence relating to matters which were litigated at the trial if the judge determines that such evidence may have resulted in a different judgment, had it been presented at the trial.

Tenn. Code Ann. § 40-26-105(a), (b). Generally, a decision whether to grant a writ of error coram nobis rests within the sound discretion of the trial court. See State v. Hart, 911 S.W.2d 371, 375 (Tenn. Crim. App. 1995).

The writ of error coram nobis is a post-conviction mechanism that has a long history in the common law and the State of Tennessee. See, e.g., State v. Vasques, 221 S.W.3d 514, 524-26 (Tenn. 2007). The writ "is an extraordinary procedural remedy . . . [that] fills only a slight gap into which few cases fall." State v. Mixon, 983 S.W.2d 661, 672 (Tenn. 1999).

Our supreme court has outlined the procedure that a court considering a petition for a writ of error coram nobis is to follow:

> [T]he trial judge must first consider the newly discovered evidence and be "reasonably well satisfied" with its veracity. If the defendant is "without fault" in the sense that the

exercise of reasonable diligence would not have led to a timely discovery of the new information, the trial judge must then consider both the evidence at trial and that offered at the coram nobis proceeding in order to determine whether the new evidence may have led to a different result.

Vasques, 221 S.W.3d at 527. In determining whether the new information may have led to a different result, the question before the court is "'whether a reasonable basis exists for concluding that had the evidence been presented at trial, the result of the proceeding might have been different.'" Id. (quoting State v. Roberto Vasques, No. M2004-00166-CCA-R3-CD, 2005 WL 2477530, at *13 (Tenn. Crim. App. at Nashville, Oct. 7, 2005)). A petition for a writ of error coram nobis "'may be dismissed without a hearing, and without the appointment of counsel for a hearing' if the petition does not allege facts showing that the petitioner is entitled to relief." Richard Hale Austin v. State, No. W2005-02591-CCA-R3-CO, 2006 WL 3626332, at *4 (Tenn. Crim. App. at Jackson, Dec. 13, 2006) (quoting State ex rel. Edmondson v. Henderson, 421 S.W.2d 635, 636 (Tenn. 1967)).

First, we will address the Petitioner's claims that the coram nobis court erred by using the statute of limitations as a basis for denying the petition when the State did not raise the statute of limitations as an affirmative defense and that the court erred by concluding due process did not warrant tolling the statute of limitations. A writ of error coram nobis must be filed within one year after the judgment becomes final in the trial court. Tenn. Code Ann. § 27-7-103. "The statute of limitations is computed from the date the judgment of the trial court becomes final, either thirty days after its entry in the trial court if no post-trial motions are filed or upon entry of an order disposing of a timely filed, post-trial motion." State v. Harris, 301 S.W.3d 141, 145 (Tenn. 2010). The statute of limitations is an affirmative defense that is waived if not raised by the State. See Harris v. State, 102 S.W.3d 587, 593 (Tenn. 2003). However, the issue is not waived if the Petitioner raises the issue in his or her own pleadings, as in this case. Smith v. State, 873 S.W.2d 5, 6 (Tenn. Crim. App. 1993). Moreover, a coram nobis court does not err by raising the issue sua sponte. Id. at 7.

Here, the judgments became final on September 22, 2005, when the trial court held a hearing on the Petitioner's motion for new trial and denied the motion. Thus, the one-year statute of limitations expired on September 22, 2006, and the Petitioner filed the instant petition almost nine years late. Nevertheless, the statute of limitations may be tolled on due process grounds if a petition seeks relief based upon newly discovered evidence of actual innocence. Wilson v. State, 367 S.W.3d 229, 234 (Tenn. 2012).

Our supreme court has stated that "[i]n determining whether tolling of the statute is proper, the court is required to balance the petitioner's interest in having a hearing with the interest of the State in preventing a claim that is stale and groundless." Id. In

general, "'before a state may terminate a claim for failure to comply with . . . statutes of limitations, due process requires that potential litigants be provided an opportunity for the presentation of claims at a meaningful time and in a meaningful manner.'" Id. (quoting Burford v. State, 845 S.W.2d 204, 208 (Tenn. 1992)). Our supreme court described the three steps of the "Burford rule" as follows:

> "(1) determine when the limitations period would normally have begun to run; (2) determine whether the grounds for relief actually arose after the limitations period would normally have commenced; and (3) if the grounds are 'later-arising,' determine if, under the facts of the case, a strict application of the limitations period would effectively deny the petitioner a reasonable opportunity to present the claim."

Id. (quoting Sands v. State, 903 S.W.2d 297, 301 (Tenn. 1995)). "Whether due process considerations require tolling of a statute of limitations is a mixed question of law and fact, which we review de novo with no presumption of correctness." Harris, 301 S.W.3d at 145.

Turning to the instant case, the Petitioner has failed to demonstrate how her claim of newly discovered evidence arose after the limitations period expired or why she was effectively denied a reasonable opportunity to present her claim due to the expiration of the statute of limitations. The Petitioner obviously knew whether or not she was involved in the planning of the victim's murder and that her mother could testify favorably for her. See Joseph Stinnett v. State, No. M2007-02123-CCA-R3-CO, 2008 WL 4367462, at *6 (Tenn. Crim. App. at Nashville, Sept. 18, 2008). Although the Petitioner alleged in her petition for coram nobis relief that she could not raise the exculpatory evidence earlier because her mother would have had to incriminate herself at the Petitioner's trial, Mrs. Kerr stated in her first affidavit that she "would have had no choice but to say the same things that are in this affidavit" if called to testify. In any event, assuming Mrs. Kerr would have asserted her Fifth Amendment privilege against compulsory self-incrimination at the Petitioner's trial, Mrs. Kerr waived the privilege by entering an Alford plea.[1] See Boykin v. Alabama, 395 U.S. 238, 243 (1969); see also Alford v. North Carolina, 400 U.S. 25, 37 (1970) (finding no "material difference" between a guilty plea and a best interest plea when a defendant pleads guilty intelligently and the record before the trial court contains strong evidence of the defendant's guilt). As noted by the State, Mrs. Kerr entered her plea on June 21, 2005, her judgment of conviction became final on July 21, 2005, the one-year statute of limitations for the Petitioner's petition for a writ of error coram nobis began to run on September 22, 2005, and the statute of limitations expired on September 22, 2006. Therefore, the Petitioner could

---

[1] During Mrs. Kerr's guilty plea hearing, the trial court asked if she understood she was waiving her right against self-incrimination, and she answered, "Yes, sir."

have asserted her claim of newly discovered evidence well-before the expiration of the statute of limitations, and Mrs. Kerr could have been compelled to testify at a hearing on the petition. See State v. Billy Ray Sanlin, No. W2004-00841-CCA-R3-CD, 2005 WL 1105227, at *4 (Tenn. Crim. App. at Jackson, May 6, 2005) (citing Mitchell v. United States, 526 U.S. 314, 326 (1999)). Instead, the Petitioner took no action until Mrs. Kerr proclaimed the Petitioner's innocence. Conspicuously, Mrs. Kerr did not proclaim the Petitioner's innocence until Mrs. Kerr had served almost her entire fifteen-year sentence.

Moreover, Mrs. Kerr's affidavit that the Petitioner was not involved in the victim's death only contradicted Mr. Shoemaker's and Mr. Foutch's testimony that the Petitioner was involved and the Petitioner's own final statement that she helped plan the victim's death the night before he was killed. Newly discovered evidence that merely contradicts evidence at trial generally does not justify coram nobis relief. Hawkins v. State, 417 S.W. 2d 774, 778 (Tenn. 1967); see Jacob Edward Campbell v. State, No. M2013-02664-CCA-R3-ECN, 2014 WL 1259125, at *2 (Tenn. Crim. App. at Nashville, Mar. 26, 2014) (citing Hawkins and stating that "[t]he affidavit submitted by the Petitioner merely serves to contradict overwhelming evidence at trial that the Petitioner committed this offense, including testimony of the Petitioner's own admission to the crime from the Petitioner's cellmate"). Thus, she has failed to show that her interest in having a hearing outweighs the State's interest in preventing a stale and groundless claim. See Jacob Edward Campbell v. State, No. M2013-02664-CCA-R3-ECN, 2014 WL 1259125, at *2. In sum, the Petitioner's petition is untimely, and she has failed to show that due process requires tolling the statute of limitations.

As to the Petitioner's contention that the coram nobis court improperly concluded that Mrs. Kerr's affidavit did not constitute newly discovered evidence, our supreme court has stated that newly available evidence is newly discovered for purposes of the coram nobis statute. Taylor v. State, 171 S.W.2d 403, 405 (Tenn. 1943). Furthermore, testimony from a witness, who previously refused to testify by asserting the constitutional privilege against self-incrimination, is considered newly available evidence when the witness can no longer assert the privilege. See David G. Housler, Jr. v. State, No. M2010-02183-CCA-R3-PC, 2013 WL 5232344, at *44 (Tenn. Crim. App. at Nashville, Sept. 17, 2013). For the reasons explained above, though, the evidence in this case was available prior to the expiration of the statute of limitations. As to the Petitioner's contention that the coram nobis court used the wrong standard to deny the petition, we note that both the State and the coram nobis court cited the incorrect standard to be applied to the resolution of coram nobis claims. The proper standard is whether the jury "may have" reached a different result, not whether the jury "would have" reached a different result. Regardless, the coram nobis court dismissed the petition based upon its findings that the petition did not allege newly discovered evidence, that the petition was filed outside the one-year statute of limitations, and that the statute of limitations should not be tolled. The court did not assess whether newly discovered evidence would have caused the jury to reach a different result.

- 9 -

## III.  Conclusion

Based upon the record and the parties' briefs, we affirm the judgment of the coram nobis court.

_____
NORMA MCGEE OGLE, JUDGE