**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 12a0524n.06

No. 10-5888

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| | **FILED** | |
| | *May 22, 2012* | |
| | LEONARD GREEN, Clerk | |

UNITED STATES OF AMERICA,            )     ON APPEAL FROM THE
                                              )     UNITED STATES DISTRICT
        Plaintiff-Appellee,              )     COURT FOR THE EASTERN
                                              )     DISTRICT OF TENNESSEE
                             v.                            )
                                              )
JAMES W. HELTON,                     )
                                              )
        Defendant-Appellant.            )     **OPINION**
_____ )

**Before: DAUGHTREY and ROGERS, Circuit Judges; and ZOUHARY, District Judge.**[*]

**ZOUHARY, District Judge.** Defendant-Appellant James Wes Helton was indicted and tried by a jury on four counts of attempting to entice a minor to engage in criminal sexual activity, in violation of 18 U.S.C. § 2422(b), and one count of traveling for illicit sexual conduct, in violation of 18 U.S.C. § 2423(b). At the end of trial, Defendant moved for a judgment of acquittal, arguing entrapment. The district court denied the motion, and submitted the case to the jury.

The jury returned a guilty verdict on all counts and Defendant was sentenced to 121 months imprisonment. Defendant now appeals, arguing the district court erred when it denied his motion. Because there is record evidence that could have led a reasonable juror to conclude beyond a reasonable doubt that Defendant was predisposed, we **AFFIRM** Defendant's conviction.

_____

[*]The Honorable Jack Zouhary, United States District Judge for the Northern District of Ohio, sitting by designation.

BACKGROUND

In July 2008, a task force targeted people attempting to have sex with minors, and posted the

following advertisement on Craigslist[1] from a fictitious girl named "Hannah" (App'x I at 11):

Let's end summer vacation with a bang!!!/w4m-18 (Chattanooga). Summer vacation
has been a bust. Hanging with mom is soooo boring. I want to go back to school
with memories that will last me a year. Cute, lots of fun, and discreet. No drama!

Defendant responded via e-mail on August 26, 2008 (App'x I at 11):

If you are looking for some NSA [No Strings Attached] fun and want an older man
to show you around the bedroom then you need to drop me a line. I can provide
pictures when I know this is more serious until then I can only tell you that I will
show you things and make you feel in ways you have only dreamed about. I can/will
give you multiple O's [likely referring to multiple orgasms] through oral/intercourse
pleasure and I can last for hours. If you can handle a well endowed swm [Single
White Male] that is ddf [Drug and Disease Free] and a non smoker then you need to
reply to this and we can talk further.
Hope to hear from you soon,
James

A few hours later, agents, posing as "Hannah," replied (App'x I at 11):

WOW James . . . it seems like u read my posting and knew exactly what i was
searching for . . . just how much older r we talkin about cause actually im a bit
younger than u have to say when u r to post on craigs . . . I am soooo much more
mature than all my friends and so tired of dealing with the boys ive dated in school
. . . im lookin for exactly what u said u could do . . . someone who will take hours
with me, not five minutes in the back of a car . . . I dont think ive ever really had an
orgasam . . . The well endowed interest me and scares me a little. the boys ive been
with werent very big . . . id love to hear more and maybe set something up for the
long weekend . . . whatta u think.

After nearly a day passed with no response from Defendant, "Hannah" sent a second e-mail (App'x

I at 12):

---

[1] Craigslist is a website where users post advertisements online for various items they are selling,
or for things they want. It operates much the same way as the Classifieds section of a newspaper except it
allows users to communicate with each other anonymously. *See* http://www.craigslist. org. Electronic
exchanges are reproduced exactly as communicated.

I was really hoping id hear back from u.  it sounded soooo promising.

That evening Defendant replied (App'x I at 12):

Sounded promising here to up to where you said you were under 18 and sent the email at 10:30am when you would have been in school!! Only interested in legal fun. Thanks anyways

After a few more e-mail exchanges, Defendant asked, "What is your TRUE age?" (App'x I at 12). "Hannah" told Defendant she would be fifteen in a couple weeks and Defendant responded that "14 is really really to young" (App'x I at 13).

Nevertheless, over the following two weeks, Defendant chatted with "Hannah" nearly 100 times through e-mail, text messages, and telephone calls.  Defendant and "Hannah" exchanged photos at Defendant's suggestion and shared personal details about their lives such as thoughts on dating and life long love.  Defendant e-mailed "Hannah" pictures of roses and they exchanged phone numbers.  He also expressed concern on numerous occasions that he would be caught, either by "Hannah's" mother or by police.  However, once he was satisfied that "Hannah" was real, he began setting up a date.

Eventually the e-mails between Defendant and "Hannah" turned sordid.  Defendant promised multiple orgasms, seduction, and fantasy, while at the same time wishing "Hannah" luck on her Algebra test.  He then described, in vivid detail, what their first date would be like.

Following this series of e-mails, Defendant proposed they meet the following Friday, September 12, 2008. Defendant drove to "Hannah's" apartment and, when he pulled into the parking lot, agents arrested him.  Defendant consented to an interview after his arrest, telling agents that he was "enticed" by the young age of the task force decoy, and admitting he would have had sex with "Hannah" had she been a real fourteen-year-old girl.

3

At trial, Defendant changed his story and testified he never intended to have sex with a fourteen-year-old. He stated he went to "Hannah's" apartment to see if she was actually an adult and interested in a relationship. He also stated that if "Hannah" was a child "I wouldn't have had anything to do with her." (R. 45 at 205). Defendant contends he always believed "Hannah" was an adult merely role-playing as a child.

At the close of the Government's case, Defendant moved for judgment of acquittal on all counts under Federal Criminal Rule 29. Defendant argued he had been entrapped as a matter of law because the Government presented no evidence from which a reasonable juror could find predisposition. The district court delayed ruling on the motion and directed Defendant to proceed with his case. At the close of all the evidence, Defendant renewed his motion, which the district court denied. The jury was read the Sixth Circuit pattern instruction for entrapment and subsequently convicted Defendant on all counts.

On appeal, Defendant argues entrapment occurred and the district court erred by denying his motion.

ANALYSIS

**Standard of Review**

This Court reviews *de novo* the denial of a Rule 29 motion for acquittal. *United States v. Coleman*, 458 F.3d 453, 456 (6th Cir. 2006). In evaluating such motions, the Court asks "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). The Court does "not reweigh the evidence, reevaluate the credibility of witnesses, or substitute our judgment for that of the jury,"

4

*United States v. Martinez*, 430 F.3d 317, 330 (6th Cir. 2005), but rather "gives the prosecution the benefit of all reasonable inferences from the testimony." *United States v. Abboud*, 438 F.3d 554, 589 (6th Cir. 2006). There is a "strong presumption in favor of sustaining a jury conviction," *United States v. Peters*, 15 F.3d 540, 544 (6th Cir. 1994), and a defendant seeking judicial reversal of a jury determination of guilt bears a "very heavy burden." *Abboud*, 438 F.3d at 589.

**Entrapment**

"A valid entrapment defense requires proof of two elements: (1) government inducement of the crime, and (2) lack of predisposition on the part of the defendant to engage in the criminal activity." *United States v. Khalil*, 279 F.3d 358, 364 (6th Cir. 2002). Lack of predisposition is "the principal element in the defense of entrapment . . . ." *United States v. Russell*, 411 U.S. 423, 433 (1973). It "focuses upon whether the defendant was an 'unwary innocent' or, instead, an 'unwary criminal' who readily availed himself of the opportunity to perpetrate the crime." *Mathews v. United States*, 485 U.S. 58, 63 (1988) (quoting *Sherman v. United States*, 356 U.S. 369, 372 (1958)). The central inquiry is "whether law enforcement officials implanted a criminal design in the mind of an otherwise law-abiding citizen or whether the government merely provided an opportunity to commit a crime to one who was already predisposed to do so." *United States v. Al-Cholan*, 610 F.3d 945, 950 (6th Cir. 2010) (quoting *United States v. Pennell*, 737 F.2d 521, 534 (6th Cir. 1984)).

The issue of entrapment "is generally one for the jury, rather than for the court." *Mathews*, 485 U.S. at 63. This is because it requires a factual determination to decide "whether the criminal intent originated with the defendant or with the government's agents." *United States v. Osborne*, 935 F.2d 32, 38 (4th Cir. 1991). Still, entrapment as a matter of law is possible, although a difficult standard to meet. *United States v. Barger*, 931 F.2d 359, 366 (6th Cir. 1991). In assessing whether

5

this difficult standard is met, a court "must view th[e] evidence in the light most favorable to the prosecution and resolve all reasonable inferences therefrom in its favor." *United States v. McLernon*, 746 F.2d 1098, 1111 (6th Cir. 1984). If any evidence is in dispute, "the question must be submitted to the jury." *United States v. Jones*, 575 F.2d 81, 84 (6th Cir. 1978). Undisputed evidence "must demonstrate a 'patently clear' absence of predisposition." *Pennell*, 737 F.2d at 534 (quoting *United States v. Henciar*, 568 F.2d 489, 491 (6th Cir. 1977)). This Court "may not overturn the jury's verdict on this issue absent a determination that no reasonable juror could have concluded beyond a reasonable doubt that [the defendant] was predisposed to violate the law." *United States v. Roland*, 233 Fed. App'x 476, 482 (6th Cir. 2007) (citing *United States v. Jennings*, 945 F.2d 129, 133 (6th Cir. 1991)).

Several factors are relevant to whether a defendant is predisposed: (1) the character or reputation of the defendant, including any prior criminal record; (2) whether the suggestion of the criminal activity was initially made by the Government; (3) whether the defendant was engaged in the criminal activity for profit; (4) whether the defendant evidenced reluctance to commit the offense, overcome only by repeated Government inducement or persuasion; and (5) the nature of the inducement or persuasion by the Government. *Al-Cholan*, 610 F.3d at 950 (quoting *United States v. Moore*, 916 F.2d 1131, 1137 (6th Cir. 1990)). These factors are discussed more fully below.

**Factors of Predisposition and Evidence Presented at Trial**

First, Defendant's character and credibility is questionable because of contradictory statements he made immediately following arrest and then later at trial. For example, during his post-arrest interview, Defendant told officers he responded to the Craigslist advertisement because of "Hannah's" young age and intended to have sex with her even though she was only fourteen. At

6

trial, Defendant changed his story and testified he suspected "Hannah" was an adult merely posing as a child and would not sleep with someone that young. Construed in the light most favorable to the Government, these contradictory statements undermine Defendant's credibility.

Second, evidence exists that Defendant first suggested the criminal activity. Defendant claims the Government first suggested the criminal activity by using sexually charged homonyms such as "cum" instead of "come." But the Government disagrees, arguing it merely matched Defendant's sexual references without escalating them. The jury, who had access to all the communications between Defendant and "Hannah" was in the best position to resolve this factual dispute.

The third factor, profit, is simply irrelevant. Defendant does not argue he was motivated by money; indeed, the only motivation appears to be "his own unyielding desire to" have sex with a minor. *See United States v. Johnson*, 855 F.2d 299, 304 (6th Cir. 1988) (holding defendant not motivated by profit was more predisposed "to expand his pedophilic collection.").

Fourth, evidence suggests Defendant was not reluctant to commit the crime. For example, the Government presented evidence that normally, when people who responded to the advertisement found out "Hannah" was fourteen, they "flagged" the advertisement for deletion, discontinued communications, or reported the advertisement to law enforcement officers. Defendant, on the other hand, continued to communicate with "Hannah," in secret, and quickly attempted to have sex with her. Defendant asked for "Hannah's" picture just hours after learning her age and claiming she was "too young," and barely two weeks passed from his first communication on Craigslist until his arrest in "Hannah's" parking lot.

Fifth, none of the Government's inducement was improper. Defendant argues to the contrary and cites three cases in support: *Sherman v. United States*, 356 U.S. 369 (1958); *Jacobson v. United States*, 503 U.S. 540 (1992); and *United States v. McLernon*, 746 F.2d 1098 (6th Cir. 1984). Those cases are inapplicable here for two reasons: first, the Government's interaction with those defendants involved a long period of time; and second, inducement in those cases went beyond merely providing the opportunity to commit the crime.

For instance, in *Sherman*, a Government informant met defendant in a doctor's office where both were undergoing treatment for drug addition. 356 U.S. at 371. Over a period of many months, the informant asked defendant several times where he could get access to drugs. *Id.* Defendant continually rebuffed the informant's requests and only capitulated when the informant indicated he was physically suffering from withdrawal symptoms. *Id.*

In *Jacobson*, defendant ordered child pornography after several targeted mailings over a 26-month period. 503 U.S. at 550. Additionally, the Government, posing as a political activist group, enticed defendant to accept the pornographic mailings and to join the "fight against censorship and the infringement of individual rights." *Id.* at 552.

Finally, in *McLernon*, a Government agent became friends with defendant over an eight-year period. 746 F.2d at 1113. After eight years of close friendship, the Government agent pretended his life was in danger and asked defendant to help him deal drugs to ensure his safety. *Id.* While defendant initially reacted with "confusion, reluctance, awkwardness and dilatory tactics," eventually he relented saying, "I'll do anything in the world for you, Carlos, no matter what it is." *Id.*

Unlike the above cases, the Government here did not improperly induce or repeatedly persuade Defendant to commit the crime. Defendant did not have a lasting relationship with the

Government agent -- it took only two days for Defendant to suggest to "Hannah" that their relationship might turn sexual. Neither was Defendant subjected to repeated requests to engage in illegal activity, nor did he repeatedly refuse those requests. "Hannah's" e-mails did not request sex, they merely let Defendant know she was open to the possibility of sex, a possibility that Defendant invited less than twenty-four hours after learning "Hannah" was fourteen. Finally, in each of the three cited cases, in addition to a desire to engage in illegal activity, there also were extraneous pressures leading defendants to commit their various crimes. In *Sherman*, it was to ease the physical suffering of another. In *Jacobson*, it was to stand up for a perceived constitutional right. In *McLernon*, it was to save a friend's life. Here, the only thing enticing Defendant to commit the charged crime was the prospect of having sex with a fourteen-year-old girl.

## CONCLUSION

Ample evidence existed here to allow a reasonable juror to find, beyond a reasonable doubt, that Defendant was predisposed. Given this record evidence, the district court properly denied Defendant's Rule 29 motion. We **AFFIRM.**