NOT RECOMMENDED FOR PUBLICATION
File Name: 26a0244n.06

No. 24-6024

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
May 28, 2026
KELLY L. STEPHENS, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE EASTERN DISTRICT OF |
| GARY D. WARICK, | ) | KENTUCKY |
| Defendant-Appellant. | ) | |
| | ) | OPINION |

Before: SUTTON, Chief Judge; STRANCH and LARSEN, Circuit Judges.

**JANE B. STRANCH, Circuit Judge.** Defendant-Appellant Gary Warick directly appeals his conviction of four counts related to the distribution of methamphetamine, arguing that he was entrapped into selling drugs to a Kentucky State Police (KSP) informant. At trial, the Government presented a federal jury with recordings of Warick selling drugs to the informant, along with evidence of drugs, drug paraphernalia, and cash recovered from Warick's home and person. The jury convicted Warick on all counts and determined that the cash seized from Warick's person was subject to forfeiture. On appeal, Warick contends that the district court erred by (1) declining to give the jury an entrapment instruction on three of the four counts; (2) denying Warick's post-trial motion for judgment of acquittal; (3) excluding evidence Warick sought to admit at trial; (4) denying his request to subpoena witnesses; (5) denying his motion for a new trial; and (6) denying his motion to suppress the video of one of the controlled buys that took place at his

home. He also argues that the jury's forfeiture verdict should be overturned. For the reasons set forth below, we **AFFIRM** the district court on all issues.

## I. BACKGROUND

### A. Factual Background

In March 2022, Warick was arrested in Kentucky and spent three days at the Floyd County Detention Center where he shared a cell with Billy Hunter. After Warick's release, Hunter sent a letter informing a deputy in the detention center that a hit had been put out on him and another deputy. The KSP was informed of this potential threat and sent Detective Bradford Martin to interview Hunter. Hunter told Martin that Warick wanted to hire Hunter to murder two deputies and a judge involved with Warick's arrest; Hunter also mentioned the involvement in the murder plot of a man named John Pinion and detailed Warick's drug activity, including Warick's supplier, the quantity of drugs Warick obtained, and the prices Warick paid. The KSP began an investigation into Warick for both the murder-for-hire plot and drug trafficking. It released Hunter from custody in exchange for his agreement to work for KSP as a paid cooperating informant and to conduct controlled drug purchases from Warick.

At trial, Warick testified that he let Hunter stay at his home in 2022 because Hunter needed shelter and food after he was released from jail. Around this time, Hunter, working as a KSP informant, arranged two controlled buys with Warick: the April 26 buy and the May 3 buy. In preparation for the April 26 buy, the KSP gave Hunter $800 of prerecorded money and a video and audio recording device that resembled a cell phone before dropping him off near Warick's home. The video recording shows Hunter walking up to Warick's home, knocking and identifying himself; Hunter then enters and briefly chats with Warick who pulls two baggies out of his pocket and says that they weigh the same. Giving Warick the cash, Hunter takes one of the baggies;

Warick then lends his car to Hunter, who drives away to meet the KSP at a pre-designated location, where Hunter gives the baggie to the officers.

Prior to the May 3 controlled buy, the KSP provided Hunter with $1,600 in prerecorded money and the same recording device before dropping him off again near Warick's residence. Although Hunter's recording is not entirely clear, Warick confirmed that Hunter stayed outside the home until Warick pulled up next to Hunter, took the $1,600, and then drove away. Warick returned with Walter Setser, who handed Hunter a manilla envelope containing two ounces of methamphetamine. Hunter then met the KSP officers and gave them the baggies of methamphetamine and the recording device.

On May 4, the KSP stopped Warick's car after he left his home and, upon searching Warick, the officers found two bundles of cash—the prerecorded $1,600 from the May 3 buy and an additional $3,250. That same day, the KSP also executed a search warrant for Warick's home where officers found small plastic baggies and a scale in the living room, more scales in the kitchen, a one-ounce baggie of methamphetamine under a mattress in the master bedroom, and a one-ounce baggie of methamphetamine in the master bedroom closet.

### B. Procedural Background

A grand jury indicted Warick, charging him with conspiring to distribute methamphetamine (Count 1), distributing methamphetamine on April 26 (Count 2) and May 3 (Count 3), and possessing with intent to distribute methamphetamine (Count 4). The Indictment also alleged that the $3,250 seized from Warick during the May 4 traffic stop was forfeitable. Warick asserted an entrapment defense on all four counts, arguing that he was not a drug dealer, but that Hunter induced him into selling drugs.

The district court appointed multiple attorneys to represent Warick during pretrial proceedings, and the record shows that he had irreconcilable differences with at least three. Leading up to trial, Warick ultimately fired his third counsel, Pat Nash, during a hearing. But Warick agreed to retain Nash as stand-by counsel at the court's request and proceeded pro se.

Warick moved to suppress the video of the April 26 controlled buy where Hunter entered his home, but the district court denied the motion. Warick moved to subpoena Pinion and Hunter, but the court also denied these requests. But, because Warick claimed Hunter's testimony was necessary for his defense, the court instructed the Government to have Hunter available to testify. One week before trial, the Government told the district court that Hunter had gone missing, and that, even after expending multiple resources, he could not be found and would not be testifying. The district court then issued a subpoena for Hunter, offered to task the U.S. Marshals with locating Hunter, and proposed continuing the trial to fund a defense investigator. Warick rejected those offers and insisted on going to trial.

In the 2024 three-day jury trial, the Government presented evidence regarding the two controlled buys, which included a KSP officer detailing Hunter's role in the investigation and the video recordings of the April 26 and May 3 buys. The Government also introduced the evidence of the drugs and paraphernalia found in Warick's home and the cash seized from Warick's person, as well as Warick's prior 2010 conviction for trafficking methadone. Lastly, a KSP scientist testified that lab testing confirmed that the substances sold by Warick to Hunter and found in Warick's home all contained methamphetamine.

During his case in chief, Warick testified that he routinely used drugs but denied ever selling them. He asserted that he sold drugs during the controlled buys only because Hunter initiated a days-long scheme to entrap him after having begged to stay at Warick's home, claiming

he had no food or shelter after being released from jail. Warick stated that Hunter hounded him continuously to buy drugs even after Warick refused to sell them. Warick also moved to admit Hunter's criminal record and a recorded phone call between Warick and Pinion, but the district court denied admittance of both. He also called three witnesses: a friend who stayed with Warick during this timeframe who denied that Warick sold drugs; Warick's neighbor who explained that, when the neighbor was home from work, he did not see much traffic outside Warick's home; and a deputy who previously encountered Warick with a large amount of methamphetamine while assisting on a traffic stop. The jury also heard Warick's admission that he sold drugs to Hunter on April 26, and that even after he found out Hunter was a KSP informant on April 26, he still sold Hunter drugs on May 3 because he wanted to take the KSP's money.

Warick requested that an entrapment instruction be given to the jury on all four counts. Because Warick had presented evidence that he was entrapped before the April 26 buy, the court allowed an entrapment instruction to be given to the jury on Count 2. But it denied the instruction on Counts 1 and 3, which concern the May 3 buy, given Warick's testimony that he knew Hunter was a KSP informant and still took his money. It also denied the instruction as to Count 4 because Warick failed to link the drugs and paraphernalia found in his home on May 4 to Hunter. The jury found Warick guilty on all counts, rejected his entrapment defense on Count 2, and found the $3,250 cash seized from Warick's person forfeitable. Post trial, Warick moved for a judgment of acquittal or, alternatively, for a new trial arguing (1) he was entrapped as a matter of law; (2) the court erred in limiting the entrapment instruction to Count 2; (3) the Government violated *Brad*y; and (4) the Government violated Warick's Fifth and Sixth Amendment rights. The district court denied Warick's post-trial motion and sentenced him to ten years in prison.

Warick timely appealed with legal representation, raising seven issues: (1) the denial of his request for an entrapment instruction on Counts 1, 3, and 4; (2) the denial of his post-trial motion for a judgment of acquittal; (3) the exclusion of evidence he sought to admit at trial; (4) the denial of his requests to subpoena John Pinion and Hunter; (5) the denial of his motion for a new trial; (6) the denial of his motion to suppress; and (7) the jury's forfeiture verdict.[1]

## II.   LAW AND ANALYSIS

### A.     Denial of Entrapment Instructions

We review the district court's denial of a requested jury instruction under the abuse of discretion standard.  *United States v. Anderson*, 605 F.3d 404, 411 (6th Cir. 2010).  Jury instructions are reviewed "as a whole to determine whether they fairly and adequately submitted the issues and applicable law to the jury."  *United States v. Williams*, 952 F.2d 1504, 1512 (6th Cir. 1991).  "A district court's refusal to deliver a requested instruction is reversible only if that instruction is (1) a correct statement of the law, (2) not substantially covered by the charge actually delivered to the jury, and (3) concerns a point so important in the trial that the failure to give it substantially impairs the defendant's defense."  *Id.*

"An entrapment defense has two elements: (1) government inducement of the crime, and (2) a lack of predisposition on the part of the defendant to engage in the criminal conduct."  *United*

---

[1] Although not entirely clear from Warick's briefs, even if we assumed he adequately raised the claim that Hunter's absence from trial violated his constitutional rights, "the Sixth Amendment does not by its terms grant to a criminal defendant the right to secure the attendance and testimony of any and all witnesses: it guarantees him 'compulsory process for obtaining witnesses in his favor.'" *United States v. Valenzuela-Bernal*, 458 U.S. 858, 867 (1982) (citing U.S. Const. amend. VI).  This right is violated only when the government prevents a defendant from introducing evidence essential to his defense. *See Zarn v. Miniard*, No. 22-1161, 2022 WL 3754852, at *6 (6th Cir. Aug. 23, 2022) (citing *Crane v. Kentucky*, 476 U.S. 683, 690 (1986)).  Warick has failed to put forth evidence establishing that the Government prevented or suppressed Hunter's testimony. *See id.*

*States v. Demmler*, 655 F.3d 451, 456 (6th Cir. 2011) (citation modified) (first quoting *Mathews v. United States*, 485 U.S. 58, 63 (1988); and then quoting *United States v. Khalil*, 279 F.3d 358, 364 (6th Cir. 2002)). To be entitled to an entrapment instruction, a defendant "must provide enough evidence to support both elements of entrapment," such that a reasonable juror could find entrapment. *Id.* at 456–57.

Warick argues that although the district court allowed an entrapment instruction on Count 2, concerning the April 26 buy, it erred in declining to give the instruction on Counts 1 and 3, concerning the May 3 buy, and Count 4, concerning the May 4 search. We first address Counts 1 and 3, and then, separately, Count 4.

### 1. Counts 1 and 3: The May 3 Buy

The jury convicted Warick of conspiring to distribute (Count 1) and distributing (Count 3) methamphetamine for his May 3 sale to Hunter. We begin with the first entrapment element, whether Warick provided sufficient evidence that he was induced to sell drugs on May 3. *See Demmler*, 655 F.3d at 456. Government inducement is "something more than merely affording an opportunity or facilities for the commission of the crime," *United States v. Poulsen*, 655 F.3d 492, 502 (6th Cir. 2011) (citation modified); it "requires an opportunity *plus* something else—typically, excessive pressure by the government upon the defendant or the government's taking advantage of an alternative, non-criminal type of motive," *United States v. Wilson*, 653 F. App'x 433, 439 (6th Cir. 2016) (citation modified) (quoting *United States v. Dixon*, 396 F. App'x 183, 186 (6th Cir. 2010)).

As background, the district court first held that Warick presented sufficient evidence to establish a question of fact as to whether he was induced to sell Hunter drugs on April 26 based on his testimony that Hunter took advantage of his good will to gain entry into his home and then

pressured him to sell drugs. This testimony, the district court explained, established that the KSP provided Warick an opportunity to sell drugs *plus* exerted excessive pressure while taking advantage of his non-criminal motive to help a friend; *see Wilson*, 653 F. App'x at 439. But circumstances changed before the May 3 buy: Warick testified he became aware that Hunter "was with the state police, and [he] knew they were setting [him] up," but thought "'I'm going to take this dude's money. Man, I'm going to take their money.' I know who the boss is, and they keep harassing me and hounding me, and I'm going to take their money." R. 221, Trial Tr., PageID 2722, 2725. With respect to the May 3 buy, Warick's admission that he knowingly participated in a drug transaction with a KSP informant "to take their money" forecloses his ability to claim that the Government exerted undue pressure or exploited his sympathies. The Government did no more than provide a mere opportunity. *See Wilson*, 653 F. App'x at 439. Warick's greed or desire for revenge, not his fear or pity, did the rest.

The predisposition element "focuses upon whether the defendant was an unwary innocent or instead, an unwary criminal who readily availed himself of the opportunity to perpetrate the crime." *United States v. Khalil*, 279 F.3d 358, 365 (6th Cir. 2002) (citation modified) (quoting *Mathews*, 485 U.S. at 63). Our circuit has identified several relevant factors in analyzing predisposition:

> (1) the character or reputation of the defendant, including any prior criminal record; (2) whether the suggestion of the criminal activity was initially made by the government; (3) whether the defendant was engaged in the criminal activity for profit; (4) whether the defendant evidenced reluctance to commit the offense, overcome only by repeated government inducement or persuasion; and (5) the nature of the inducement or persuasion supplied by the government.

*Id.* (citation modified) (quoting *United States v. Barger*, 931 F.2d 359, 366 (6th Cir. 1991)).

In evaluating entrapment as to Count 2, the district court noted that the record regarding predisposition to sell drugs on April 26 contains conflicting evidence: The jury heard that Warick had a prior conviction for selling prescription drugs, had methamphetamine in his home the day after the May 3 buy, routinely used drugs, and that prior to the events here, a deputy found Warick with a large amount of methamphetamine. The jury, however, also heard testimony that Warick's prior conviction was old (from 2010), as well as other testimony that neighbors did not see Warick dealing drugs or having increased traffic around his house when Hunter was staying with him. While the latter countervailing evidence, albeit weak, may favor his character and reputation on the first predisposition factor, Warick's admitted knowledge that he was dealing drugs with a KSP informant weighs against him on most of the remaining factors: Warick admittedly engaged in the May 3 buy for profit (third factor), he did not exhibit reluctance to take the KSP's money (fourth factor), nor can he claim improper inducement because he knowingly dealt drugs with a KSP informant (fifth factor). On this record, Warick's assertions of lack of predisposition and improper inducement fail to establish a sufficient factual predicate to warrant an entrapment instruction on Counts 1 and 3.

### 2. Count 4: The May 4 Search

Warick was convicted of possessing with intent to distribute the methamphetamine found in his home during the May 4 search. Officers found small plastic baggies and a scale in his living room, more scales in the kitchen, a one-ounce baggie of methamphetamine under a mattress, and a one-ounce baggie of methamphetamine in a bedroom closet. The district court declined to give an entrapment instruction on this count because it found that Warick failed to tie these drugs to Hunter. Arguing that the May 4 search fruits were not "dramatically separated" from the preceding controlled buys, Warick contends the jury could have concluded that: the methamphetamine and

paraphernalia were for personal use; the Government failed to link these items to drug trafficking; and, even if they were linked, their use extended no further than his dealings with Hunter.

Warick's arguments are unavailing because he had the burden of proof to "provide enough evidence to support both elements of entrapment in order to receive the instruction." *Demmler*, 655 F.3d at 456–57 (citing *Khalil*, 279 F.3d at 364–65). Even so, the Government provided evidence that the drugs found in Warick's home on May 4 were linked to drug trafficking. In the video of the April 26 buy, Warick pulls out two small baggies of methamphetamine and states that they weigh the same before selling one to Hunter in the same room where a scale and empty baggies were found during the May 4 search. Furthermore, the drugs and paraphernalia were found only one day after the May 3 buy where Setser got out of Warick's car and handed Hunter the envelope containing two individual plastic bags of methamphetamine. Because Warick failed to demonstrate that Hunter played any role in his possession of the drugs found in his home on May 4, he was not entitled to an entrapment instruction on Count 4.

### 3. Harmless Error Review

Even if Warick had been entitled to entrapment instructions on Counts 1, 3, and 4, we may affirm the district court's refusal to provide the instructions if this was harmless error. "[E]rroneous jury instructions are harmless if we can conclude, beyond a reasonable doubt, that the jury would have convicted [the defendant] . . . anyway." *United States v. Householder*, 137 F.4th 454, 474 (6th Cir. 2025) (citing *Neder v. United States*, 527 U.S. 1, 18 (1999)), *petition for cert. filed*, (U.S. Dec. 29, 2025) (No. 25-756). Given that the jury convicted Warick on Count 2 despite receiving an entrapment instruction and based on comparatively stronger evidence, it is beyond a reasonable doubt the jury would have also convicted Warick on Counts 1, 3, and 4 even if it had received an equivalent instruction. *See id.* As explained above, although Warick provided

some evidence of improper inducement and his lack of predisposition as to the April 26 buy, he failed to produce comparable evidence as to the May 3 buy and the drugs found during the May 4 search.

### B.     Denial of Motion for a Judgment of Acquittal

Warick challenges the district court's denial of his motion for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29, arguing that he was entrapped as a matter of law. "This court reviews a district court's denial of a post-trial motion based on the purely legal issue of entrapment as a matter of law de novo." *United States v. Amawi*, 695 F.3d 457, 483 (6th Cir. 2012) (citation modified) (quoting *United States v. Al-Cholan*, 610 F.3d 945, 950 (6th Cir. 2010)). "A district court can find entrapment as a matter of law where (1) the testimony and facts are undisputed; and (2) the evidence demonstrates a patently clear absence of predisposition." *Id.* Entrapment is generally an issue for the jury, not the court; but "entrapment as a matter of law is possible, although a difficult standard to meet." *United States v. Helton*, 480 F. App'x 846, 849 (6th Cir. 2012) (citing *United States v. Barger*, 931 F.2d at 366). We must view the evidence in the light most favorable to the Government and resolve all reasonable inferences in its favor. *United States v. McLernon*, 746 F.2d 1098, 1111 (6th Cir. 1984). "Viewing the evidence in this light, we must uphold the jury's verdict unless no reasonable juror could conclude beyond a reasonable doubt that [Warick] was predisposed to commit the offense charged." *Id.*

Our foregoing conclusion that Warick failed to make the threshold showing required for an entrapment instruction on Counts 1, 3, and 4 shows that his entrapment as a matter of law claim fails from the outset with respect to these counts. We therefore focus on Warick's Count 2 arguments.

Viewed in the light most favorable to the Government, does the record allow a reasonable juror to find that Warick was predisposed to sell Hunter drugs on April 26? Warick responds in the negative, arguing that the Government offered only a single piece of evidence, his 2010 conviction for selling methadone (a prescribed opioid), and that this conviction is too remote in time and distinct from his methamphetamine charges here to be probative. "Where entrapment is in issue, evidence of prior crimes is not relevant unless it tends to prove that defendant was engaged in illegal operations in some way similar to those charged in the indictment." *United States v. Blankenship*, 775 F.2d 735, 739 (6th Cir. 1985) (citation modified) (quoting *United States v. Bramble*, 641 F.2d 681, 682 (9th Cir. 1981), *cert denied*, 459 U.S. 1072 (1982)). Such evidence, however, "is not admissible to prove a predisposition to commit criminal acts generally." *Id.* And although the prior conduct must be "in some way similar," *id.* (quoting *Bramble*, 641 F.2d at 682)), our precedent makes clear that it need not "be precisely the same as that for which the defendant is being prosecuted" to be admissible, *Al-Cholan*, 610 F.3d at 951 (citation modified) (quoting *United States v. Brand*, 467 F.3d 179, 200 (2d Cir. 2006)). Nevertheless, we need not decide whether Warick's 2010 conviction was sufficiently similar in kind to his convictions here because other evidence supports a reasonable juror's finding of predisposition.

"The most important factor in determining the lack of predisposition as a matter of law . . . is whether the defendant evidenced reluctance to engage in criminal activity which was overcome by repeated Government inducements." *McLernon*, 746 F.2d at 1113 (citation modified) (quoting *United States v. Kaminski*, 703 F.2d 1004, 1008 (7th Cir. 1983)). The video recording of the April 26 buy shows Hunter entering Warick's home, Warick casually trading the drugs for cash, offering a choice between two baggies of drugs and then voluntarily loaning Hunter his car. Warick has not put forth any evidence of reluctance to engage in this transaction; in fact, his trial testimony

about the April 26 buy strongly suggests otherwise: When asked "[Y]ou did not seem to have any hesitation when it came to taking his money. Would you agree?" he responded, "I agree." And in response to "There was no hesitation on the video – participating in that transaction; is that correct?" he said "Correct." Warick also admitted that he had the drugs in this case tested and that the test revealed to him that the drugs were 100% meth.

At trial, Warick's inducement evidence consisted almost entirely of his own generalized statements that Hunter kept calling, harassing, and hounding him until Warick kicked him out of the house. Yet, "the mere fact that the Government informant in the instant case on various occasions attempted to arrange the purchase of narcotics from [Warick] does not establish the defense of entrapment as a matter of law." *United States v. Henciar*, 568 F.2d 489, 491 (6th Cir. 1977). The evidence that Warick was previously found by law enforcement with a large amount of methamphetamine, and that baggies, scales, and baggies containing methamphetamine were found in his home around the time of the April 26 buy, support a reasonable finding of predisposition.

Because entrapment as a matter of law also cannot be found as to Count 2, the district court did not err in denying Warick's motion for judgment of acquittal.

### C.     Exclusion of Evidence

Warick challenges two evidentiary exclusions at trial on two different legal grounds: (1) that the district court's exclusion of Hunter's criminal history violated Warick's Fifth and Sixth Amendment rights, and (2) that its exclusion of a recorded phone call between Warick and Pinion was an abuse of discretion.

### 1. Hunter's Criminal History

At trial, Warick moved to admit Hunter's past convictions for fraud and identity theft, arguing they showed that Hunter is "manipulative" and has a pattern of inducing or entrapping innocent people. The district court excluded this evidence under Federal Rules of Evidence 403 and 404(b). On appeal, Warick argues that this evidence suggests that Hunter had a specific motive to incriminate Warick to curry favor with the Government and avoid Hunter's own criminal problems.

"The Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense." *United States v. Blackwell*, 459 F.3d 739, 752 (6th Cir. 2006) (citation modified) (quoting *Holmes v. South Carolina*, 547 U.S. 319, 331 (2006)). Whereas the Fifth Amendment provides an overarching due process guarantee of a meaningful opportunity to present a defense, the Sixth Amendment defines the basic elements of a fair trial through specific provisions. *Strickland v. Washington*, 466 U.S. 668, 684–85 (1984). And when a defendant claims an evidentiary ruling violates a constitutional amendment, the court reviews de novo "the legal aspects of the constitutional violation." *United States v. Reichert*, 747 F.3d 445, 453 (6th Cir. 2014). It is well settled that district courts have "[b]road discretion" when making admissibility determinations, "and those decisions will not be lightly overruled." *United States v. Cleveland*, 907 F.3d 423, 436 (6th Cir. 2018) (quoting *United States v. Dixon*, 413 F.3d 540, 544 (6th Cir. 2005)). "[D]efendants who claim that a district court's exclusion of evidence violated their constitutional right to present a complete defense must meet two demanding requirements." *United States v. Reynolds*, 86 F.4th 332, 351 (6th Cir. 2023). They must first show that the exclusion of evidence was "arbitrary" or "disproportionate" to the interest that the court sought to

serve. *Id.* (quoting *Holmes*, 547 U.S. at 324–25). And second, defendants must have "a weighty reason for seeking to admit the evidence." *Id.* (citation modified).

Begin with the arbitrary or disproportionate inquiry. The district court excluded Hunter's criminal history under Rule 403 which permits courts to "exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. A challenge to "well-established rules of evidence," like Rule 403, does not typically satisfy the required arbitrary or disproportionate showing. *Reynolds*, 86 F.4th at 351 (citation modified) (quoting *Holmes*, 547 U.S. at 326). Rather, to be arbitrary or disproportionate, the exclusion must not serve "any legitimate interests" or be done in a manner that is "disproportionate to the ends that the rationale for exclusion is asserted to promote." *Reichert*, 747 F.3d at 453 (citation modified) (quoting *Holmes*, 547 U.S. at 325–26).

To be sure, Hunter's past charges of fraud and identity theft may have been admissible under Rule 404(b)(2) which permits the admission of prior bad acts to show Hunter's "motive, opportunity, [or] intent" for conducting controlled buys with Warick. Fed. R. Evid. 404(b)(2). But ultimately, this evidence was unnecessarily cumulative with little probative value—the jury heard through witness testimony that Hunter was released from jail to assist the KSP as a paid informant who might receive leniency on his own criminal charges. And whether Hunter wanted to entrap Warick says little about Warick's predisposition to traffic drugs. Because these past charges have little probative value, the district court's exclusion aligns with Rule 403 and therefore cannot be said to be arbitrary or disproportionate. *See Reichert*, 747 F.3d at 453.

As to the second requirement, to establish a "weighty" reason to admit Hunter's criminal history, Warick must show that this evidence "created a reasonable doubt about [Warick's] guilt

that would not have existed based on the admitted evidence alone." *Reynolds*, 86 F.4th at 351 (citation modified) (quoting *Reichert*, 747 F.3d at 453). The jury heard evidence that Hunter was previously incarcerated and how he became a paid informant. So, to the extent this evidence bears on Hunter's motive for working with the KSP, the jury's conviction of Warick and denial of an entrapment defense on Count 2—despite having heard that Hunter cooperated with the KSP to get out of jail—confirms that Hunter's criminal history would not have created a reasonable doubt about Warick's guilt. And because Hunter was neither testifying nor a hearsay declarant, his credibility was generally not at issue. Warick therefore fails to explain how Hunter's criminal history adds any new evidence that would impact Warick's guilt. His constitutional claim therefore fails.

### 2.     Recorded Phone Call Between Warick and Pinion

Warick sought to admit at trial an authenticated, taped conversation between himself and Pinion, in which Pinion allegedly denies any knowledge of Warick's participation in the murder-for-hire plot. The district court excluded the tape on the basis that it was irrelevant, prejudicial, and inadmissible hearsay. Now Warick argues that the district court abused its discretion by excluding this evidence. When reviewing a district court's evidentiary rulings for an abuse of discretion, we reverse the exclusion only if "left with a definite and firm conviction that the trial court committed a clear error of judgment." *United States v. Mack*, 808 F.3d 1074, 1084 (6th Cir. 2015) (citation modified).

Hearsay is defined under Federal Rule of Evidence 801(c) as a statement not made "while testifying at the current trial" and offered "to prove the truth of the matter asserted." Fed. R. Evid. 801(c). And under Rule 802, hearsay is inadmissible unless an exception applies. Fed. R. Evid. 802. Warick fails to explain why this tape is not hearsay—he seeks to offer it for its truth, that

Pinion did not have knowledge of the murder-for-hire plot—nor has Warick put forth a valid exception. Moreover, this tape is inadmissible under Rule 608(b) because this case concerns Warick's drug trafficking, not the murder-for-hire plot; admitting it would risk a minitrial on collateral matters, precisely the type of distraction the Federal Rules of Evidence intend to avoid. *See Boggs v. Collins*, 226 F.3d 728, 744 (6th Cir. 2000). In sum, the district court was within its discretion to exclude the tape.

### D.     Denial of Subpoena

Warick contends the district court violated Federal Rule of Criminal Procedure 17(b) by denying his request to subpoena Pinion and Hunter to testify at trial. Rule 17(b) governs the right of an indigent defendant to have the court subpoena his witnesses. The Rule states that the court shall order such subpoena "if the defendant shows an inability to pay the witness's fees and the necessity of the witness's presence for an adequate defense." Fed. R. Crim. P. 17(b). A witness is "necessary to an adequate defense" when that witness is "relevant, material and useful to an adequate defense." *United States v. Moore*, 917 F.2d 215, 230 (6th Cir. 1990). We review a district court's refusal to issue a subpoena under Rule 17(b) under the abuse of discretion standard and will not reverse such denial "unless the exceptional circumstances of the case indicate that defendant's right to a complete, fair and adequate trial is jeopardized." *United States v. Ross*, 703 F.3d 856, 877 (6th Cir. 2012) (citation modified).

Start with Hunter. Although Warick's first request to subpoena Hunter was denied, when the Government informed the court that it could not locate Hunter after expending many resources, the court quickly responded and issued the subpoena, offered to continue the trial, and fund a defense investigator to locate Hunter. But Warick declined the continuance, and Warick cannot now re-characterize his rejection of the district court's remedies as the district court's legal error.

As to Pinion, Warick contends that Pinion's testimony is relevant and material to his defense because Pinion denied knowing Hunter or Warick, thereby undermining Hunter's murder-for-hire allegations, shedding light on Hunter's motive to induce Warick into selling narcotics, and supporting Warick's entrapment defense. But, as noted above, Hunter's motive and whether he lied about the murder-for-hire plot is irrelevant to Warick's entrapment defense and risks confusing the jury. Warick has failed to offer a sufficient basis to show that Pinion's testimony is necessary to Warick's defense; accordingly, the district court did not abuse its discretion in denying the subpoena request.

###    E.    Denial of Motion for New Trial

Warick claims that the government failed to disclose before trial text messages between Hunter and Detective Martin. These text messages include (1) Detective Martin asking for updates about the controlled buys, (2) Hunter saying Warick was acting "weird" after not sleeping, and (3) Hunter reporting Warick's planned May 3 drug deal. Though at a pretrial hearing Detective Martin testified that he communicated with Hunter via text message, Warick did not inquire into the content of these messages until after the verdict. On appeal, Warick argues that because the Government failed to disclose these messages earlier, it violated *Brady v. Maryland*, 373 U.S. 83 (1963), and therefore he is entitled to a new trial.

"This court reviews denial of a motion for new trial based on *Brady* violations under an abuse of discretion standard," but it reviews de novo the district court's determination as to the existence of a *Brady* violation. *United States v. Graham*, 484 F.3d 413, 416–17 (6th Cir. 2007). To establish a *Brady* violation, Warick has the burden of showing: (1) the government suppressed evidence, either willfully or inadvertently; (2) such evidence was favorable to the defense, either

because it is exculpatory or impeaching; and (3) the suppressed evidence was material (i.e. that prejudice ensued). *United States v. Dado*, 759 F.3d 550, 559–60 (6th Cir. 2014).

We begin and end with materiality. "[E]vidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *United States v. Bagley*, 473 U.S. 667, 682 (1985) (plurality opinion). And when determining whether undisclosed evidence meets this "reasonable probability" test, "the suppressed evidence is considered collectively, rather than item-by-item." *Schledwitz v. United States*, 169 F.3d 1003, 1012 (6th Cir. 1999) (citation modified). Hunter's texts confirm Warick's drug activity—stating that some "dude" was bringing Warick drugs, that Warick had drugs, and that he was going to sell them to Hunter—and that Hunter was staying at Warick's house; that Warick was "trusting" Hunter, and that Hunter was trying to make the controlled buys happen. But the jury heard testimony about Warick's drug use and Hunter's stay at Warick's home. Our cases have recognized "that evidence that is merely cumulative to evidence presented at trial is not material for purposes of *Brady* analysis." *Montgomery v. Bobby*, 654 F.3d 668, 679 (6th Cir. 2011) (citation modified). Nor do the messages regarding the logistics of planning the controlled buys undermine the jury's verdict because, without more, Hunter's various attempts "to arrange the purchase of narcotics is insufficient to establish entrapment." *Barger*, 931 F.2d at 367. In sum, because Warick failed to establish a *Brady* violation, the district court did not err in denying the motion for a new trial. *See Bagley*, 473 U.S. at 682.

F.      **Denial of Motion to Suppress**

Warick appeals the district court's denial of his motion to suppress the recorded video of the April 26 controlled buy in which Hunter purchased methamphetamine with KSP funds. We

review the district court's factual determinations under the clear error standard and the legal conclusions de novo. *United States v. Waide*, 60 F.4th 327, 335 (6th Cir. 2023).

The Fourth Amendment, applicable to the States through the Fourteenth Amendment, provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV; *Lanza v. New York*, 370 U.S. 139, 142 (1962). To determine whether Warick's Fourth Amendment rights were violated, we must answer two questions: First, was his house searched? *See Mockeridge v. Harvey*, 149 F.4th 826, 833 (6th Cir. 2025). If so, was the search reasonable? *See id.*

Hunter, working as a KSP informant, entered Warick's home on April 26 with the purpose of recording and executing a controlled drug purchase. "When the government gains information by physically intruding into one's home, a search within the original meaning of the Fourth Amendment has undoubtedly occurred." *Morgan v. Fairfield County*, 903 F.3d 553, 561 (6th Cir. 2018) (citation modified) (quoting *Florida v. Jardines*, 569 U.S. 1, 5 (2013)). We therefore turn to whether this search was reasonable under the Fourth Amendment. There was no warrant permitting Hunter's entry into Warick's home, and "it is well settled" that a "warrantless search is per se unreasonable subject only to a few specifically established and well-delineated exceptions." *Id.* at 560–61 (citation modified) (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973)). One of these exceptions is a search that is conducted pursuant to voluntary consent. *Schneckloth*, 412 U.S. at 219.

Warick argues that he did not consent to Hunter's entry because he had been previously deceived by Hunter's false claim that he was homeless and down on his luck. But even if Hunter

had falsely aroused Warick's sympathy in the past, that did not make the April 26 entry unlawful.[2]

As the Supreme Court explained in *Lewis v. United States*, consent by deception is permitted when a defendant "invite[s] [an] undercover agent to his home for the specific purpose of executing a felonious sale of narcotics." 385 U.S. 206, 210 (1966). Such invitation "convert[s the home] into a commercial center to which outsiders are invited for purposes of transacting unlawful business, [and] that business is entitled to no greater sanctity than if it were carried on in a store, a garage, a car, or on the street." *Id.* at 211. "Of course, this does not mean that, whenever entry is obtained by invitation and the locus is characterized as a place of business, an agent is authorized to conduct a general search for incriminating materials." *Id.* Rather, a government agent "may enter upon the premises for the very purposes contemplated by the occupant." *Id.* Our circuit has applied *Lewis*'s holding in several decisions. *See United States v. Pollard*, 215 F.3d 643, 648 (6th Cir. 2000); *United States v. Jones*, 533 F. App'x 562, 571 (6th Cir. 2013); *United States v. Wooden*, 945 F.3d 498, 503 (6th Cir. 2019), *rev'd on other grounds*, 142 S. Ct. 1063 (2022). And we also followed the Supreme Court's holding in *United States v. White* that no warrant is required where an undercover agent enters the defendant's home with consent to purchase narcotics and wears a recording device. 401 U.S. 745, 751–54 (1971); *see United States v. Yang*, 281 F.3d 534, 548 (6th Cir. 2002); *see also United States v. Lippman*, 492 F.2d 314, 318 (6th Cir. 1974).

Hunter's entry into Warick's home on April 26 fits within both *Lewis* and *White* because the video of the April 26 buy shows that Warick consented to Hunter entering his home for the

---

[2] In places, Warick appears to argue that the April 26 entry was the fruit of Hunter's previous deception that convinced Warick to allow Hunter into his home. But the exclusionary rule applies to evidence "derived from information or items obtained in an illegal search." *United States v. Elmore*, 18 F.4th 193, 199 (6th Cir. 2021) (citation modified). And Hunter does not appear to have used the pre-April 26 entry to conduct any Fourth Amendment search for evidence used at trial. Nor did he gain information used to develop the investigation.

purpose of selling narcotics: Hunter knocks on the door, identifies himself, walks into the home, and chats with Warick; Warick then pulls out two baggies from his pocket, says they weigh the same, and takes Hunter's money in payment for a baggie. To the extent Warick claims that these facts rise to a level of improper deception sufficient to invalidate his consent, precedent suggests otherwise. The Supreme Court found improper deception in *Gouled v. United States*, when an undercover agent, pretending to make a friendly call to the defendant, gained admission to the defendant's office, and (in his absence) conducted a generalized search to find incriminating evidence—the Court took issue, not with the deceptive relationship, but the deceptive entry. 255 U.S. 298, 304 (1921), *overruled in part on other grounds, Warden Md. Penitentiary v. Hayden*, 387 U.S. 294 (1967). No similar facts are present here—even assuming that Hunter had falsely engendered Warick's sympathy, Hunter unquestionably entered Warick's home on April 26, at Warick's invitation, to purchase the narcotics, did so, and promptly left. And there is no indication that Warick felt he had "no choice but to invite" Hunter inside, which we have found to constitute improper deception. *United States v. Hardin,* 539 F.3d 404, 424 n.11 (6th Cir. 2008). Because the Fourth Amendment "does not protect [Warick] from misplaced confidence in [his] associates," *United States v. Baldwin*, 621 F.2d 251, 252 (6th Cir. 1980), we affirm the district court's denial of Warick's motion to suppress.

### G. Jury Forfeiture Verdict

Lastly, Warick challenges the district court's submission of the forfeiture question to the jury and the jury's verdict that $3,250 seized from Warick's person was forfeitable. On the procedural front, "if the indictment . . . states that the government is seeking forfeiture, the court must determine before the jury begins deliberating whether either party requests that the jury be retained to determine the forfeitability of specific property if it returns a guilty verdict." Fed. R.

Crim. P. 32.2(b)(5)(A).  The Indictment here contains a forfeiture allegation for $3,250.00 seized from Warick during a traffic stop on May 4, pursuant to 21 U.S.C. § 853.  Before trial, the district court discussed the issue of forfeiture with the parties and determined that, rather than having the court decide the issue, a forfeiture instruction would be submitted to the jury.  This instruction was therefore properly submitted.

Regarding the jury's verdict, § 853(a)(1) provides that a person convicted under federal law of committing a felony drug offense must forfeit to the United States any direct or indirect proceeds obtained from drug trafficking, and under (a)(2), must forfeit any property used, or intended to be used, to commit or facilitate such drug trafficking.  21 U.S.C. § 853(a)(1), (a)(2). The Government bears the burden of proving the nexus between property and the drug violation by a preponderance of the evidence.  *United States v. Smith*, 966 F.2d 1045, 1052, 1055 (6th Cir. 1992).  In determining the sufficiency of the evidence, we afford substantial deference to jury verdicts.  *United States v. Veggacado*, 37 F. App'x 189, 190 (6th Cir. 2002).  We may not "weigh the evidence, pass on the credibility of the witnesses, nor substitute our judgment for that of the jury," and must discern whether the government met its burden by viewing the evidence in the light most favorable to the government.  *Id.* (citation modified).

Our circuit has found evidence supporting forfeiture to include: (1) government recovery of bulk amounts of currency, (2) prior convictions for drug crimes, (3) insufficient income to explain large sums of cash, and the cash's proximity to drugs.  *United States v. Darden-Mosby*, 101 F.4th 465, 469 (6th Cir. 2024).  Each was present here.  The $3,250 was found on May 4 in Warick's pants pocket bundled alongside the $1,600 KSP money that Hunter gave Warick during the May 3 buy.  And at the time of the May 4 traffic stop, Warick was driving with his co-conspirator, had access to multiple baggies of methamphetamine over the course of the week prior,

and had just left his home where the Government found scales, empty baggies, and baggies of meth. Warick offered an alternative source of the money by submitting evidence that he was being paid for construction work, but the woman who hired Warick could not remember his payment schedule and testified that her payments were likely in the form of a check. Viewed in its totality, this evidence demonstrates by a preponderance of the evidence a sufficient nexus between Warick's drug trafficking and the $3,250.00. *See Darden-Mosby*, 101 F.4th at 469. We thus affirm the jury's forfeiture verdict.

## III.   CONCLSUION

For the foregoing reasons, we **AFFIRM** the district court on all claims.